Opinion of the court delivered by
Judge Whyte.
The circuit court charged the jury, that the county court of Davidson county had jurisdiction to grant letters of administration to Thomas Hickman, and' the same were not void. The correctness of this charge we will examine. This jurisdiction of granting letters pi administration by the county court, must depend, cither upon the statute law, that is, our acts of Assembly, or the common law, by which is meant the law governing the jurisdiction at the time of settling the province of North Carolina, which our ancestors brought with them, and adopted, until their new government altered them, or on both these taken together.
First, as to the statute law. The earliest act of Assembly on the subject is 1715, ch. 48. The 1st section recognizes a practice that had existed before this act, of granting administrations by the Council, general court, and precinct court, by powers and commissions granted by the Governor, Deputy Governor, President and Council; and declares them to be good and effectual to all intents, as if they had been granted by any ordinary, of other ecclesiastical judge or person. Section 2, enacts, it shall be lawful for the Governor, the general court, or precinct court, to have wills proved before them; and to grant orders for administration. Section 3 provides, that letters testamentary, and letters of administration, shall *626 istration after the relinquishment of the intestate’s broth-A er, Robert Nelson, if it had appeared that the county court had jurisdiction of the matter; because, if jurisdic-¿jon jSsjiewnj the correct exercise of it will be presumed, if the contrary does not appear. In the present case, this court is not left to presumption; it appears upon the defendants’ title, that the county court of Davidson had not jurisdiction upon the face of the order made by it, for the grant to Hickman. It is as follows: ‘‘State of Tennessee, Davidson county court, July sessions, 1800. Robert Nelson, Esq. brother of Alexander Nelson, deceased, said to have died intestate; comes into court, and relinquishes his right of administration on the estate of his brother, the said Alexander; and on motion of Thomas Hickman, letters of administration are granted to him on the estate of said Nelson, deceased, he having given bond and security as by law is required. A copy test, Nathan Ewing,'clerk of said court.” This order wants two essential requisites to shewjurisdiction; 1st, intestacy; 2d,that the usual residence of the intestate at the time of his death was in the county of Davidson, or a fixed place of residence there. As to the first of these requisites, intestacy, the record does not state it as a fact, but as, a rumor merely, “said to have died intestate.” As to the second requisite, it is wholly wanting; no pretence of its existence can be drawn from the record of the ordér. The letters of administration do not appear in the record, and it is immaterial, for they can only be of equal import with the order, which they cannot transcend or overpass, and are proper evidence of it, being only a copy of the original minutes of the court, drawn up in a more formal manner. See 3 East. 129. No presumption in aid of the jurisdiction can therefore be derived from the issuance of the letters of administration, if they now had existence and were produced, and even appeared different from the order, for the order constitutes the authority for the proper officer, the clerk, afterwards to make it out. It may be here observed, that this order of Davidson county court, for granting administration to Thomas Hickman, on the estate of Alex *627 ander Nelson, deceased, is highly illustrative of the evils and mischiefs stated in the preamble of the act of 1789, ch. 23, and that the acts and proceedings founded upon that order, appearing upon the record of the present cause, and operating such injurious and ruinous consequences against right and justice, are strongly impressive on this court, to see that the remedy for them enacted by the first section of that act, be duly attended to and put in practice.
Having seen that our statute law did not authorize this grant of administration to Thomas Hickman, and supposing, that the acts of assembly mentioned, together with the act of 1809, ch. 121, not heretofore mentioned, do not make a complete system on the subject matter of probate and administration, as far as the legislature intended, let us next see whether the law of England, or such part of it on the subject, as our ancestors may be presumed to have brought with them, and adopted upon the first settlement of the state of North Carolina, hath any bearing on this administration, either in support or derogation of if.
By the common law, before there’ was any ecclesiastical jurisdiction, the cognizance of wills belonged to the civil magistrate; and the better opinion seems to be, says Lord Chief Baron Comyns, that the probate of testaments belonged to the county court, or to the court baron of the respective lord of the manor, where the testator died; and in the case of intestacy, if the intestate died in the war, the care of his goods was under the direction of the temporal court where the goods were. (Comyn’s Dig. adm’r. B. 6, and adm’r. A.) The probate of wills does not belong to the spiritual court by the civil or canon law, nor does it, originally, by the common law; but it was established in the spiritual court before the time of Henry II. A. D. 1155, and now only belongs to it for things personal. (Comyn’s Dig. adm’r. B. 6.) The law upon this subject in England, about the time of the settlement of North Carolina, was, that the right to grant probate and administration, belonged to the ordi *628 nary of a certain territory, the limits of which bounded his jurisdiction, and confined his cognizance to the cases arising within it. This ordinary was the bishop in and over ^is diocese, i unless a peculiar lay within it, an exempt jurisdiction, being a privilege founded on the notion of an original composition between the owner of the peculiar, and the ordinary of the diocese for that purpose, of granting probate and administration, in which case it belonged to the owner of the peculiar. The archbishop was the ordinary in his own diocese, subject to the exception of the peculiar,in the same manner as in the case of a bishop. In all'these jurisdictions the parties must have resided at the time of their death, to give jurisdiction of granting probate and administration. (3 Ba. Abr. 34, 39; Toller’s Law of Ex. 49, 50.) The archbishop hath jurisdiction as metropolitan of his province, when the intestate had goods in several dioceses within his province, or in several peculiars, or in a diocese and a peculiar, or if the death of the party, be in one diocese, and no goods there, but having bona notahilia in another diocese in the same province, or if the death is beyond sea, or out of the kingdom, and goods in England in one diocese ; in all these cases, he has the right oí granting probate and administration.
This is the outline of the law on this subject, as it existed before the statute law of North Carolina made any alterations in it. The analogy between it and our statute law at the present day, is very striking. That jurisdiction is local, so is our jurisdiction: there it belongs to the ordinary who has cognizance of all cases arising within his territorial limits, whether he be bishop or peculiar; here it belongs to the county court, having the like cognizance. The existing fact to raise the cognizance, is the same in both, to wit, the residence of the party at the time of his death within the limits of the territorial jurisdiction, with a small variation here in the case where the deceased had fixed places of residence in more than one county, then, the cognizance is given to the court of either of the counties.^ This forms the general law, and embraces *629 the great body of cases. The jurisdiction of the. arch-J ,. . , . . . bishop m his capacity as metropolitan, is only m particular cases, and circumscribed. Now in all these cases, in this state and in England, as well before the common ordinary as the metropolitan, to give cognizance, the residence of the party at the time of his death within the territorial limits of the jurisdiction, must have existed as a fact; the only exception in England, is, where the death took place out of the kingdom; and as we apprehend, goods and chattels also, in which are included debts due to the intestate, ought to exist as another fact, to give cognizance; but-we have not been able to find this laid down in any book, or even noticed, but such would seem to result from the very nature of the grant, and the office and duty required by it to be discharged; for if no goods, the proceeding is vain. Neither have we been able to find any case of a grant of administration where it appeared (here were no goods. But on this point we give no opinion, the case not requiring it; for the law is clear, and laid down in many books, that the grant of probate and administration by a bishop, or other ordinary, when it does not belong to him, is merely void; as is the grant in the present case to Hickman, by the county court of Davidson.
The grant of administration to Thomas Hickman on the estate of Alexander Nelson, deceased, being void, the scire facias issued by Russel Gower, against the said Thomas Hickman, administrator of the said Alexander Nelson, did not bring the personal representative of the said Alexander before the county court of Davidson county, and make him a party to that suit; the proceedings therefore in the said court, by virtue of the said process was void, and the judgment of revival of the judgment of 1794, upon the attachment of Russel Gower against Alexander Nelson, for the sum of $>534 27, being the balance due thereon, to be recovered of the said Hickman, of assets, quando acciderent, is also void, and so is also the scire facias, upon this last judgment, issued in the name of Russel Gower, against the heir of the said *630 Alexander Nelson, and the proceedings thereon, and all the judgment rendered against said heir for this, as well as 0ther reasons, because there is no judgment against the pers0nal representative of the ancestor of the said heir.
The judgment of the circuit court in the present cause, must be reversed, and the cause remanded to the circuit court of Davidson county for a new trial, to be had therein, conformable to the law as held in this opinion.
Judgment reversed.