# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
October 6, 2011 Session

## IN RE  ESTATE OF ARDELL HAMILTON TRIGG

**Appeal by Permission from the Court of Appeals, Middle Section**
**Circuit Court for Putnam County**
**No. 08N0305      John J. Maddux, Jr., Judge**

---

**No.M2009-02107-SC-R11-CV - Filed May 30, 2012**

---

In this case, we address the following two matters: (1) the proper procedure for obtaining appellate review of a judgment of a probate court created by private act upholding a claim filed by the Bureau of TennCare against the estate of a TennCare recipient and (2) the right of TennCare to obtain reimbursement for properly paid TennCare benefits from real property owned by the recipient at the time of her death.  After the decedent's will was admitted to probate in the Putnam County Probate Court, TennCare filed a claim against her estate seeking reimbursement for services provided through the TennCare program.  The decedent's personal representative filed an exception to this claim.  After the probate court upheld TennCare's claim, the estate appealed to the Circuit Court for Putnam County.  The circuit court determined that the decedent's real property was not subject to TennCare's claim, and TennCare appealed to the Court of Appeals.  The Court of Appeals held that the circuit court lacked subject matter jurisdiction over the appeal from the probate court and that the appeal should have been filed with the Court of Appeals.  Accordingly, it vacated the circuit court's judgment and affirmed the judgment of the probate court. *In re Estate of Trigg*, No. M2009-02107-COA-R3-CV, 2011 WL 497459, at *3 (Tenn. Ct. App. Feb. 9, 2011).  We granted the estate's application for permission to appeal to determine whether the circuit court had subject matter jurisdiction over the estate's appeal from the probate court's order upholding TennCare's claim and whether real property owned by the recipient at the time of her death is subject to TennCare's claims.  We have determined that the circuit court lacked jurisdiction over the estate's appeal from the probate court's judgment regarding TennCare's disputed claim and that the real property owned by the decedent at the time of her death is subject to TennCare's claims for reimbursement.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, GARY R. WADE, and SHARON G. LEE, JJ., joined.

Henry D. Fincher, Cookeville, Tennessee, for the appellant, Estate of Ardell Hamilton Trigg.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; and L. Vincent Williams, Deputy Attorney General, for the appellee, Tennessee Bureau of TennCare.

## OPINION

### I.

Ardell Hamilton Trigg passed away on August 5, 2006. She left behind a small estate consisting of some personal property and a house. Her will, leaving her real property to Susan and Mark Shaw, was filed for probate in the Putnam County Probate Court on October 26, 2006. The probate court named Ms. Shaw as the personal representative of Ms. Trigg's estate.

Ms. Shaw placed a notice to creditors of the estate in the Cookeville *Herald-Citizen* on November 10, 2006. On May 23, 2007, the Bureau of TennCare ("TennCare") filed a claim against the estate seeking to recover $22,319.09 for nursing home and long-term care services provided to Ms. Trigg between 2002 and 2006. Ms. Shaw filed exceptions to TennCare's claim. Following a June 18, 2008 hearing, the probate court filed an order on June 22, 2008, overruling the estate's exception to the claim. Ms. Shaw, on behalf of Ms. Trigg's estate, appealed the probate court's decision to the Circuit Court for Putnam County.

As far as this record shows, the only portions of the probate court's record that were filed in the circuit court were TennCare's claim, the estate's exception to the claim, and the probate court's order. Neither party preserved a record of the proceedings before the probate court. Following a hearing on August 21, 2009, the circuit court filed an order on August 31, 2009, upholding the estate's exception to TennCare's claim against the real property that Ms. Trigg owned when she died. The circuit court reasoned that the real property was not part of Ms. Trigg's estate because it passed under her will to her beneficiaries at the time of her death. Accordingly, the circuit court remanded the case to the probate court to determine whether the estate contained any other assets that could be used to satisfy TennCare's claim.

TennCare appealed the circuit court's decision to the Court of Appeals.[1] TennCare asserted in its brief, for the first time, that the circuit court lacked jurisdiction over the appeal from the probate court.[2] TennCare also asserted that the circuit court had made factual determinations even though neither party had submitted evidence and that Tennessee law permits using a decedent's real property to satisfy claims against an estate. Ms. Trigg's estate responded that the circuit court had jurisdiction to hear its appeal from the probate court and that federal law did not permit the sale of assets that were not part of the "probate estate" to satisfy TennCare's claims because Tennessee had not adopted the "broader definition" of "estate," as permitted by federal law.

In an opinion handed down on February 9, 2011, the Court of Appeals concluded that the circuit court lacked jurisdiction over the estate's appeal from the probate court. *In re Estate of Trigg*, No. M2009–02107–COA–R3-CV, 2011 WL 497459, at *3 (Tenn. Ct. App. Feb. 9, 2011). Accordingly, the Court of Appeals, without reaching the merits, vacated the circuit court's judgment, affirmed the probate court's judgment, and remanded the case to the probate court for further proceedings. *In re Estate of Trigg*, 2011 WL 497459, at *3.

Ms. Trigg's estate filed a Tenn. R. App. P. 11 application for permission to appeal. We granted this application to address the proper procedure to obtain appellate review of a decision of a probate court created by private act and to determine whether current Tennessee law permits TennCare to satisfy its claims for reimbursement of properly paid benefits from real property passing outside of a TennCare recipient's probate estate.

## II.

We turn first to the circuit court's subject matter jurisdiction over the estate's appeal from the probate court's judgment. The estate asserts that Tenn. Code Ann. § 30-2-609(c) (2007 & Supp. 2011) confers jurisdiction on the Circuit Court for Putnam County to hear

---

[1]The informality of the parties' and the circuit court's approach to preserving a fair, accurate, and complete record of the proceedings is reflected in the record in this case. The parties could not agree on matters that were properly part of the record of the proceedings in the circuit court. Even though the parties filed conflicting statements of the evidence, the circuit court failed to settle these disputes as required by Tenn. R. App. P. 24(e). *See Bellamy v. Cracker Barrel Old Country Store, Inc.*, 302 S.W.3d 278, 280-81 (Tenn. 2009).

[2]The better practice would have been to file a Tenn. R. Civ. P. 12.02 motion in the circuit court challenging its subject matter jurisdiction. However, questions involving a court's subject matter jurisdiction have been deemed so important that appellate courts may address them even if they were not raised in the trial court. *Manning v. Feidelson*, 175 Tenn. 576, 578, 136 S.W.2d 510, 510-11 (1940). Accordingly, Tenn. R. App. P. 13(b) permits the issue of a court's subject matter jurisdiction to be raised for the first time on appeal.

appeals from the Putnam County Probate Court. TennCare responds that the Court of Appeals has jurisdiction over appeals from the decisions of the Putnam County Probate Court because, in probate matters, the probate court has concurrent jurisdiction with the circuit court and because Tenn. Code Ann. § 30-2-315(b) (2007) confers appellate jurisdiction on the Court of Appeals with regard to appeals from a probate court's decision regarding claims against an estate that are tried without a jury. We have determined that TennCare has the better argument.

**A.**

Subject matter jurisdiction relates to a court's authority to adjudicate a particular type of case or controversy brought before it. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004); *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000). A court derives subject matter jurisdiction, either explicitly or by necessary implication, from the Constitution of Tennessee or from a statute enacted by the Tennessee General Assembly or Congress. *Osborn v. Marr*, 127 S.W.3d at 739; *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Walker v. White*, 89 S.W.3d 573, 577 (Tenn. Ct. App. 2002). The parties cannot confer subject matter jurisdiction on a trial or appellate court by appearance, plea, consent, silence, or waiver. *Caton v. Pic-Walsh Freight Co.*, 211 Tenn. 334, 338, 364 S.W.2d 931, 933 (1963); *Brown v. Brown*, 198 Tenn. 600, 619, 281 S.W.2d 492, 501 (1955).

Because the orders and judgments entered by courts without jurisdiction over the subject matter of a dispute are void, *Brown v. Brown*, 198 Tenn. at 610, 281 S.W.2d at 497, issues regarding a court's subject matter jurisdiction should be considered as a threshold inquiry, *Redwing v. Catholic Bishop for the Diocese of Memphis*, ___ S.W.3d ___, ___, 2012 WL 604481, at *4 (Tenn. Feb. 27, 2012), and should be resolved at the earliest possible opportunity. When a court's subject matter jurisdiction over a particular claim is challenged, the claimant must demonstrate that the court has the jurisdiction to adjudicate its claim. *Redwing v. Catholic Bishop for the Diocese of Memphis*, ___ S.W.3d at ___, 2012 WL 604481, at *4.

Determining whether subject matter jurisdiction exists in a particular case requires the courts to examine (1) the nature or gravamen of the cause of action, (2) the nature of the relief being sought, and (3) the constitutional or statutory provisions relied upon by the plaintiff. *See Northland Ins. Co. v. State*, 33 S.W.3d at 729; *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). All these matters involve questions of law. Therefore, determinations regarding a court's subject matter jurisdiction are questions of law which will be reviewed de novo without a presumption of correctness. *Northland Ins. Co. v. State*, 33 S.W.3d at 729; *Benson v. Herbst*, 240 S.W.3d 235, 239 (Tenn. Ct. App. 2007).

The jurisdictional dispute in this case arises from the parties' respective reliance on seemingly conflicting statutes that appear to vest subject matter jurisdiction over appeals from probate court judgments in different courts. Accordingly, we are required to construe these statutes to determine where jurisdiction for an appeal from a decision of the Putnam County Probate Court relating to a disputed claim against an estate lies. The construction of statutes and the application of statutes to the facts of a particular case are also questions of law which are reviewed de novo without a presumption of correctness. *Brundage v. Cumberland Cnty.*, 357 S.W.3d 361, 364 (Tenn. 2011); *Gautreaux v. Internal Med. Educ. Found., Inc.*, 336 S.W.3d 526, 531 (Tenn. 2011).

When we are called upon to construe statutes, we must first ascertain their purpose and then we must give this purpose the fullest possible effect without expanding the application of the statute beyond its intended scope. *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009); *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 309 (Tenn. 2008). The text of the statute is of primary importance to this endeavor. *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012). We must (1) give these words their natural and ordinary meaning, (2) consider them in the context of the entire statute, and (3) presume that the General Assembly intended to give each of these words its full effect. *Knox Cnty. ex rel. Envtl. Termite & Pest Control, Inc. v. Arrow Exterminators, Inc.*, 350 S.W.3d 511, 524 (Tenn. 2011).

**B.**

The seeds of the jurisdictional confusion surrounding probate proceedings in Tennessee courts and their appeals were sown centuries ago in England. Our probate courts trace their lineage to the English courts of the seventeenth and eighteenth centuries when three courts exercised jurisdiction over matters relating to the probate and the administration of decedents' estates. Each of these courts had limited jurisdiction. Thus, a decedent's creditors, heirs, legatees, and others claiming an interest in the decedent's property were required to select the correct court depending on the nature of the property interest they were claiming and on the relief they sought.

The Court of King's Bench and the Court of Common Pleas could provide the relief available at common law with regard to the decedent's real and personal property. The High Court of Chancery could provide equitable relief with regard to the decedent's real and personal property if the relief available at common law was not adequate. These three royal courts were the only courts with jurisdiction over claims involving real property.[3] In addition

---

[3]*Buchanan v. Matlock*, 27 Tenn. (8 Hum.) 390, 394 (1847); *see also* John F. Winkler, *The Probate*
(continued...)

-5-

to these three royal courts, persons claiming an interest in a decedent's personal property could seek relief from the ecclesiastical courts of the Church of England. These ecclesiastical courts could grant relief under canon law rather than the legal or equitable relief provided by the royal courts.[4] The complexity of this system was frequently criticized; however, efforts to reform it were generally unsuccessful until the mid-nineteenth century.[5]

The American colonies replicated the English model to a certain extent. Some colonies, particularly those in New England, created a single court with broad jurisdiction over the probate of wills and the administration of estates.[6] Other colonies duplicated the English system by creating common-law, equity, and ecclesiastical courts.[7] Following the American Revolution, the new American states and territories faced difficult problems organizing their courts with jurisdiction over probate and estate matters.[8]

Before Tennessee became a state, the State of North Carolina created county courts called the Court of Pleas and Quarter Sessions that had two functions – serving as the governing body of the county and acting as a judicial tribunal with limited civil and criminal jurisdiction.[9] Under statutes enacted by the North Carolina legislature in 1777 and 1794, these county courts exercised jurisdiction, among other things, over the probate of wills, the grant of letters testamentary, contests between different claimants to the estate, inventories, accounts and settlements, and suits for legacies and distributive shares.[10] County court decisions in probate matters were appealed to the superior court. *Cf. Woolard's Ex'rs v. Woolard*, 30 N.C. (8 Ired.) 322, 322 (1848); *Hodges v. Jasper*, 12 N.C. (1 Dev.) 459, 460 (1828).

---

[3](...continued)
*Courts of Ohio*, 28 U. Tol. L. Rev. 563, 563-64 (1997) ("Winkler").

[4]Winkler, 28 U. Tol. L. Rev. at 564-65.

[5]Winkler, 28 U. Tol. L. Rev. at 566-67.

[6]Winkler, 28 U. Tol. L. Rev. at 567.

[7]Winkler, 28 U. Tol. L. Rev. at 568. Most colonies found it difficult to replicate the English model because they lacked institutions resembling the ecclesiastical courts. Sarajane Love, *Estate Creditors, The Constitution, and the Uniform Probate Code*, 30 U. Rich. L. Rev. 411, 416 (1996).

[8]Winkler, 28 U. Tol. L. Rev. at 568.

[9]Robert Pritchard, *A Treatise on the Law of Wills and Administration* § 34, at 37-39 (2d ed. 1928) ("Pritchard 2d").

[10]Pritchard 2d § 34, at 39-40; *see also Townsend v. Townsend*, 44 Tenn. (4 Cold.) 70, 78 (1867).

When Tennessee drafted its constitution and became a state in 1796, it inherited the "legal and political institutions" created by North Carolina, except to the extent that these institutions conflicted with the new Constitution of Tennessee.[11]  Among the surviving institutions were the county courts.  *Pope v. Phifer*, 50 Tenn. (3 Heisk.) 682, 684-86 (1871), *overruled on other grounds by Prescott v. Duncan*, 126 Tenn. 106, 148 S.W. 229, 237-38 (1912).  As a result, Tennessee retained a probate system that was essentially the same as North Carolina's.  *Burrow v. Ragland*, 25 Tenn. (6 Hum.) 481, 486 (1846); *Nelson's Lessee v. Griffin*, 10 Tenn. (2 Yer.) 624, 629-31 (1829).  Appeals from a county court's decisions in probate matters were to the circuit court, Tennessee's counterpart to North Carolina's superior court.  2 Jack W. Robinson, Sr., et al., *Pritchard on the Law of Wills and Administration of Estates* § 573 (6th ed. 2007) ("Pritchard 6th").

The Tennessee Constitution of 1834 left the establishment of inferior courts to the General Assembly and provided for establishing courts to be held by justices of the peace.  Tenn. Const. art. VI, §§ 1, 3 (1834).  The first General Assembly that convened following the adoption of the 1834 Constitution re-created the county courts and gave them the same civil jurisdiction that they had exercised under existing law.  Act of Dec. 3, 1835, ch. 6, §§ 1, 3, 1835 Tenn. Pub. Acts 45, 45-46; Pritchard 2d § 35, at 41-42.

Tennessee's probate system remained relatively unchanged for over one hundred years.  In 1939, the General Assembly modified the probate laws in an effort "to afford a simple, inexpensive, and expeditious remedy for [the] administration of estates of decedents."  *Cooper's Estate v. Keathley*, 27 Tenn. App. 7, 15, 177 S.W.2d 356, 359 (1943); *see also Bowling v. Minton*, 193 Tenn. 141, 145, 244 S.W.2d 998, 1000 (1951) (stating that the purpose of the 1939 Act "was to expedite the settling up of estates").  This legislation (1) required the decedent's personal representative to provide public notice of the probate proceeding in order to enable creditors to file timely claims;[12]  (2) permitted any person interested in an estate, including the personal representative or a creditor, distributee, or heir, to file a written exception taking issue with any claim filed against the estate;[13] and (3) provided that appeals from a county court's judgment regarding exceptions to claims against an estate were to be filed in "the appropriate court."[14]

---

[11]Pritchard 2d § 34, at 38-39.

[12]Act of Mar. 6, 1939, ch. 175, § 1, 1939 Tenn. Pub. Acts 651, 651-52 (codified as amended at Tenn. Code Ann. § 30-2-306 (Supp. 2011)).

[13]Act of Mar. 6, 1939, ch. 175, § 3, 1939 Tenn. Pub. Acts 651, 654 (codified as amended at Tenn. Code Ann. § 30-2-314 (2007)).

[14]Act of Mar. 6, 1939, ch. 175, § 3, 1939 Tenn. Pub. Acts 651, 654.

Under the 1939 legislation, all issues relating to claims against an estate or exceptions to these claims were tried by the county court. Neither the claimant nor the estate was entitled to a jury trial; however, dissatisfied parties could obtain a jury trial by appeal to the circuit court. *See Commerce Union Bank v. Gillespie*, 178 Tenn. 179, 187, 156 S.W.2d 425, 428 (1940).

Shortly after the 1939 legislation became effective, Commerce Union Bank filed a declaratory judgment action seeking instructions regarding the establishment of a trust created in the will of J.W. Gillepsie. *Commerce Union Bank v. Gillespie*, 178 Tenn. at 185, 156 S.W.2d at 427. Despite concerns that the questions raised by the bank were not justiciable,[15] this Court held initially that the trial court had correctly construed the statute to mean that the "appropriate court" was the circuit court. *Commerce Union Bank v. Gillespie*, 178 Tenn. at 196, 156 S.W.2d at 431. However, in response to a petition for rehearing, the Court reversed field and held that appeals from a county court's judgment regarding a claim against a decedent's estate should be "direct to the Court of Appeals or Supreme Court, as the case may be."[16] *Commerce Union Bank v. Gillespie*, 178 Tenn. at 196, 156 S.W.2d at 431.

Three years later, this Court revisited the question of the court to which a county court's judgment regarding a claim against a decedent's estate should be appealed. After candidly acknowledging that the decision in *Commerce Union Bank v. Gillespie* had "failed to deal more clearly" with the question, this Court squarely held that appeals in these cases were properly taken to the circuit court, while appeals from judgments ordering the sale of a decedent's real property to pay the estate's debts were properly filed in either the Court of Appeals or the Supreme Court depending on the nature of the proceeding in the lower court. *Walker v. Gambill*, 181 Tenn. 38, 42, 178 S.W.2d 390, 391-92 (1944).

---

[15]*Commerce Union Bank v. Gillespie*, 178 Tenn. at 195-96, 156 S.W.2d at 431.

[16]At that time, decisions regarding whether the appeal should be filed in the Court of Appeals or the Supreme Court depended on the nature of the proceeding in the trial court. *Gormany v. Ryan*, 154 Tenn. 432, 433, 289 S.W. 497, 498 (1926). If the county court decided the claim on the merits without stipulation, the appeal was properly filed with the Court of Appeals. If the proceeding in the county court was based on stipulated facts or did not involve a review or determination of facts, the appeal was properly filed in the Supreme Court. *Sizemore v. Rinehart*, 193 Tenn. 475, 479, 246 S.W.2d 91, 93 (1952); 2 Harry Phillips, *Pritchard on the Law of Wills and Administration of Estates* § 743b, at 270-71 (3d ed. 1955) ("Pritchard 3d"). The General Assembly removed this distinction in 1977. *See* Act of May 17, 1977, ch. 390, § 1, 1977 Tenn. Pub. Acts 990, 990 (originally codified at Tenn. Code Ann. § 16-408 (Supp. 1977)). Accordingly, the Court of Appeals now has jurisdiction over "all civil cases except workers' compensation cases and appeals pursuant to § 37-10-304(g)." Tenn. Code Ann. § 16-4-108(a)(1) (2009).

In 1947, the General Assembly again prescribed different procedures for the disposition of claims against an estate. When a claimant or person excepting to a claim requested a jury trial, the county court was required to certify the case to the circuit court for disposition.[17] Like other judgments of the circuit court, the circuit court's disposition of a claim against a decedent's estate was immediately appealable to the Court of Appeals or the Supreme Court depending on the nature of the proceeding.[18] If neither the claimant nor the person filing the exception requested a jury trial, the county court adjudicated the claim.[19] The county court's judgments were appealed to "the Court of Appeals or the Supreme Court, as the case may be."[20] This is the statute – Tenn. Code Ann. § 30-2-315(b) – that the Court of Appeals cited to support its decision that the Circuit Court for Putnam County did not have jurisdiction over the estate's appeal in this case from the Putnam County Probate Court's judgment regarding TennCare's claim against Ms. Trigg's estate.

The 1978 ratification of amendments to the Constitution of Tennessee brought about additional significant changes in probate practice in Tennessee. By the mid-1970s, the judicial powers of the county judge had been eroded by the establishment of general sessions courts, and the county judge was serving essentially as "mayor of the county."[21] Accordingly, the amendments to Article VII, Section 1 effectively eliminated the office of county judge and replaced it with a county executive.[22] The amended constitution did not vest any judicial powers in the county executive. *Waters v. State ex rel. Schmutzer*, 583 S.W.2d 756, 759-60 (Tenn. 1979).

---

[17]Act of Mar. 14, 1947, ch. 213, § 2, 1947 Tenn. Pub. Acts 818, 819 (originally codified at Tenn. Code Ann. § 30-517 (1977)) (codified as amended at Tenn. Code Ann. § 30-2-314).

[18]2 Pritchard 3d § 743b, at 271.

[19]Act of Mar. 14, 1947, ch. 213, § 3-A, 1947 Tenn. Pub. Acts 818, 820-21 (originally codified at Tenn. Code Ann. § 30-518 (1977)) (codified as amended at Tenn. Code Ann. § 30-2-315 (2007)).

[20]Act of Mar. 14, 1947, ch. 213, § 3-A, 1947 Tenn. Pub. Acts 818, 820-21 (originally codified at Tenn. Code Ann. § 30-518) (codified as amended at Tenn. Code Ann. § 30-2-315(b)). Following 1977, all appeals from a county court's judgment relating to a claim against a decedent's estate were filed in the Court of Appeals. *See* Tenn. Code Ann. § 16-408 (Supp. 1977). In 1981, the General Assembly explicitly provided that these appeals "shall be governed by the Tennessee Rules of Appellate Procedure." Act of May 20, 1981, ch. 449, § 2(19), 1981 Tenn. Pub. Acts 667, 672 (codified at Tenn. Code Ann. § 30-2-315(b)).

[21]*See* Lewis L. Laska, *The 1977 Limited Constitutional Convention*, 61 Tenn. L. Rev. 485, 516 (1994).

[22]1 Pritchard 6th § 40, at 60.

In 1978, the General Assembly undertook to vest the newly created county executives with the judicial powers formerly held by the county judges.[23] One year later, however, this Court found this legislation unconstitutional in a case involving a juvenile court judge, because the legislation conflicted with the constitutional age requirements for juvenile court judges and with the constitutionally prescribed length of their term of office. *Waters v. State ex rel. Schmutzer*, 583 S.W.2d at 760. In so finding, this Court noted that the same constitutional requirements applied to the office of judge of the county court as to the office of juvenile court judge. *Waters v. State ex rel. Schmutzer*, 583 S.W.2d at 760.

In 1980, the Tennessee General Assembly vested the chancery courts with "all jurisdiction relating to the probate of wills and the administration of estates."[24] However, the General Assembly exempted from this general grant of probate jurisdiction all counties in which the jurisdiction over probate matters had already been assigned by "public, private, special or local acts."[25] Putnam County is among the counties that have not vested probate jurisdiction in the chancery court. The 1980 legislation also provided that appeals from the judgments of chancery courts exercising probate jurisdiction were to be filed in the Court of Appeals.[26]

---

[23] Act of Apr. 27, 1978, ch. 934, § 17, 1978 Tenn. Pub. Acts 1428, 1440-42 (codified in pertinent part at Tenn. Code Ann. § 5-6-106(a) (1980)).

[24] Act of Apr. 18, 1980, ch. 875, § 1(a), 1980 Tenn. Pub. Acts 1254, 1255 (codified as amended at Tenn. Code Ann. § 16-16-201(a) (2009)). In 1985, the General Assembly added the phrase "of every nature" to the first sentence of Tenn. Code Ann. § 16-16-201(a). *See* Act of Mar. 28, 1985, ch. 140, § 3, 1985 Tenn. Pub. Acts 250, 250. The first sentence of Tenn. Code Ann. § 16-16-201(a) currently reads:

> In all counties where not otherwise specifically provided by public, private, special or local acts, all jurisdiction relating to the probate of wills and the administration of estates of every nature, including the estates of decedents and of wards under guardianships or conservatorships and related matters previously vested in the county court, the county judge or county chair, is vested in the chancery court of the respective counties.

[25] Act of April 18, 1980, ch. 875, § 1(a), 1980 Tenn. Pub. Acts 1254, 1255. In approximately one-third of Tennessee's counties, probate jurisdiction had already been vested in courts other than the county court. *See* 1 Jack W. Robinson, Sr. & Jeff Mobley, *Pritchard on the Law of Wills and Administration of Estates* § 41, at 67-71 (5th ed. 1994); 18 Albert W. Secor, *Tennessee Practice: Tennessee Probate* § 7:2 (2d ed. 2002) ("Secor"); Frederic S. Le Clercq, *The Tennessee Court System*, 8 Mem. St. U. L. Rev. 185, 461 (1978).

[26] Act of Apr. 18, 1980, ch. 875, § 1(c), 1980 Tenn. Pub. Acts 1254, 1256 (codified as amended at Tenn. Code Ann. § 16-16-201(c) (2009)).

The 1980 legislation did not explicitly address the manner in which the judgments of probate courts excluded under Tenn. Code Ann. § 16-16-201(a) should be appealed.[27] In 1985, the General Assembly partially addressed this oversight when it amended the statute governing appeals from judgments finally settling an account in a probate proceeding.[28] The amended statute read:

> When the court having probate jurisdiction finally settles an account, any persons adversely affected by the settlement may appeal from the judgment to the Court of Appeals or the Supreme Court, as the case may be, unless the legislation establishing the probate court provides the appeal will be to a trial court of general jurisdiction, in which case the judge of the trial court will hear the matter de novo.

Tenn. Code Ann. § 30-2-609 (2001).[29] By its own terms, this statute applied only to judgments finally settling an account in a probate proceeding.

In 2002, the General Assembly replaced the appellate process in Tenn. Code Ann. § 30-2-609 that it had created in 1985 with the three-tiered appellate structure currently found in Tenn. Code Ann. § 30-2-609.[30] Ms. Trigg's estate bases its assertion that the Circuit Court for Putnam County had subject matter jurisdiction over its appeal from the probate court's judgment in favor of TennCare on Tenn. Code Ann. § 30-2-609.

Applying the current version of Tenn. Code Ann. § 30-2-609, the first tier includes counties having a population of 500,000 or more according to the 2000 federal census or any subsequent federal census. Tenn. Code Ann. § 30-2-609(a). In these counties, the judgments of probate courts finally settling accounts are appealed to the Court of Appeals. Tenn. Code Ann. § 30-2-609(a). The second tier includes counties in which the population is less than

---

[27]In 2001, the Court of Appeals held that the appellate procedure prescribed in Tenn. Code Ann. § 16-16-201(c) should also be applied to the judgments of general sessions courts that had been vested with probate jurisdiction. *In re Estate of White*, 77 S.W.3d 765, 768-69 (Tenn. Ct. App. 2001). This case did not involve a claim against an estate, nor did it involve an exception to the final settlement of an estate.

[28]Act of Mar. 28, 1985, ch. 140, § 21, 1985 Tenn. Pub. Acts 250, 254-55 (codified at Tenn. Code Ann. § 30-2-609 (2001)).

[29]Prior to this amendment, appeals from a probate court's judgment finally settling an account were filed in the circuit or chancery court. Tenn. Code Ann. § 30-2-609 (1984).

[30]Act of May 8, 2002, ch. 754, 2002 Tenn. Pub. Acts 1874 (codified as amended at Tenn. Code Ann. § 30-2-609 (2007 & Supp. 2011)).

500,000 according to the 2000 federal census or any subsequent federal census and in which the probate judge "is the circuit court judge or chancellor of the judicial district." Tenn. Code Ann. § 30-2-609(b)(1), (d). In these counties, all judgments relating to the settlement of accounts or to any other probate matter are likewise appealed to the Court of Appeals. Tenn. Code Ann. § 30-2-609(b)(1), (d).[31]

The procedure for appeals from courts exercising probate jurisdiction in the third-tier counties resembles the appellate process Tennessee inherited from North Carolina. This tier includes counties with a population of less than 500,000 according to the 2000 federal census or any subsequent federal census and in which the probate judge "is *not* the circuit court judge or chancellor of the judicial district." Tenn. Code Ann. § 30-2-609(b)(2), (c) (emphasis added).[32] In these counties, except for the six counties to which Tenn. Code Ann. § 30-2-609(e) applies,[33] appeals by any person adversely affected by the settlement of an account are "to the appropriate trial court of general jurisdiction in which case the trial judge shall hear the matter de novo." Tenn. Code Ann. § 30-2-609(c).

## C.

Ms. Trigg's estate asserts that Tenn. Code Ann. § 30-2-609(c)[34] provides the circuit court with jurisdiction over its appeal from the probate court's denial of its exception to TennCare's claim. TennCare responds that Tenn. Code Ann. § 30-2-609(c) is inapplicable

---

[31]*See also* Act of May 8, 2002, ch. 754, §§ 1(b)(1), 2(b), 2002 Tenn. Pub. Acts 1874, 1874-75.

[32]*See also* Act of May 8, 2002, ch. 754, §§ 1(b)(2), 2(a), 2002 Tenn. Pub. Acts 1874, 1874.

[33]Between 2003 and 2009, the General Assembly amended Tenn. Code Ann. § 30-2-609 to provide that appeals from the courts exercising probate jurisdiction in certain third-tier counties would be filed in the Court of Appeals rather than the "appropriate trial court of general jurisdiction." *See* Act of May 5, 2003, ch. 157, § 1, 2003 Tenn. Pub. Acts 261, 261; Act of May 28, 2009, ch. 396, § 1, 2009 Tenn. Pub. Acts 420, 421. Currently, these six counties include: Blount, Cheatham, Jefferson, Loudon, Sevier, and Wilson.

[34]Tenn. Code Ann. § 30-2-609(c) states:

> Except in any county having a population of five hundred thousand (500,000) or more according to the 2000 census or any subsequent federal census, the appeal of any decision, ruling, order, or judgment of a probate court that is served by a judge who is not the circuit court judge or chancellor of the judicial circuit in which the matter arose shall be to the appropriate trial court of general jurisdiction in which case the trial judge shall hear the matter de novo.

and that Tenn. Code Ann. § 30-2-315(b)[35] requires that the appeal from the probate court's denial of the estate's exception to its claim be filed in the Court of Appeals.

We must construe the statutes relating to appeals in probate proceedings in light of other statutes that involve the same subject matter or that share a common purpose. *SNPCO, Inc. v. City of Jefferson City*, ___ S.W.3d ___, ___, 2012 WL 987998, at *6 (Tenn. Mar. 26, 2012). In doing so, we should, whenever possible, avoid interpreting related statutes in a way that places them in conflict with each other. *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010); *Sharp v. Richardson*, 937 S.W.2d 846, 849 (Tenn. 1996) (quoting *Cronin v. Howe*, 906 S.W.2d 910, 912 (Tenn. 1995)).

Viewed in the context of a probate proceeding, Tenn. Code Ann. § 30-2-315(b) and Tenn. Code Ann. § 30-2-609(c) are not in conflict. The two statutes apply to separate facets of a probate proceeding. Tenn. Code Ann. § 30-2-315(b) governs appeals from orders involving claims against an estate filed in a probate proceeding; while Tenn. Code Ann. § 30-2-609(c) governs appeals from orders approving the final settlement of an estate.

The probate of a decedent's will and the administration of a decedent's estate are among the most complex areas of the law. *See* 18 Secor § 1:1, at 1. The probate proceeding provides the vehicle for identifying and collecting the decedent's property, paying the debts of the decedent and the estate in an orderly way, and distributing the remainder of the estate to those entitled to share in the estate either under the decedent's will or according to the laws of descent and distribution. *Lillard v. Tolliver*, 154 Tenn. 304, 312, 285 S.W. 576, 578 (1926) (superseded by statute as recognized in *In re Estate of Barnhill*, 62 S.W.3d 139, 142-43 (Tenn. 2001)).

A probate proceeding is not an action between the parties, but rather an in rem action that focuses on the decedent's estate. *Petty v. Call*, 599 S.W.2d 791, 793 (Tenn. 1980) (quoting *Hodges v. Bauchman*, 16 Tenn. (8 Yer.) 186, 187 (1835)); *Fransioli v. Podesta*, 175 Tenn. 340, 347, 134 S.W.2d 162, 165 (1939). Commencing a probate proceeding gives interested parties the opportunity to contest the validity of the will offered for probate[36] or

---

[35]Tenn. Code Ann. § 30-2-315(b) states:

A judgment upon the findings of the court shall be entered in the court and from the judgment an appeal may be perfected within thirty (30) days from the date of entry of the judgment, to the court of appeals or the supreme court, as the case may be. The procedure on appeal shall be governed by the Tennessee Rules of Appellate Procedure.

[36]Tenn. Code Ann. § 32-4-101 to -109 (2007 & Supp. 2011); 1 Pritchard 6th §§ 352-359.

-13-

to seek judicial construction of portions of a will that are ambiguous or uncertain.[37]  Apart from providing an occasion to question the validity or meaning of the will, the proceeding enables the deceased's personal representative to, among other things, (1) notify the decedent's beneficiaries that the will has been filed for probate;[38] (2) collect and inventory the decedent's assets;[39] (3) resolve the claims submitted by the creditors of the decedent and the estate;[40] (4) manage the decedent's estate;[41] (5) make interim distributions of the estate when appropriate;[42] and (6) file interim accountings.[43]

An integral part of the proceeding in probate court involves the resolution of claims against the estate.  These claims may be filed in the probate proceeding itself,[44] or they may be filed against the personal representative in another court.[45]  The personal representative may file an exception to a claim,[46] and disputes involving claims may be resolved in a separate trial with or without a jury.  Tenn. Code Ann. §§ 30-2-314, -315(a).  A party dissatisfied with the outcome of a trial regarding a disputed claim must file a timely appeal without waiting for a final order closing the probate proceeding.  Tenn. Code Ann. §§ 30-2-314(d), -315(c).

Once the personal representative has completed the administration of the estate by identifying and inventorying all the decedent's assets, paying all claims or making arrangements for disputed claims, and providing for the expenses of administration and taxes, the personal representative may file a report of the final settlement of the estate and may

---

[37]1 Pritchard 6th §§ 401-403.

[38]Tenn. Code Ann. § 30-2-301(b) (Supp. 2011); 2 Pritchard 6th § 692.

[39]Tenn. Code Ann. § 30-2-301(a) (2007 & Supp. 2011); 2 Pritchard 6th §§ 686, 709.

[40]Tenn. Code Ann. §§ 30-2-306 to -320 (2007 & Supp. 2011); 2 Pritchard 6th §§ 788-811.

[41]2 Pritchard 6th §§ 739-760.

[42]18 Secor § 7:15.

[43]Tenn. Code Ann. § 30-2-601(a) (2007).

[44]Tenn. Code Ann. § 30-2-307 (2007).

[45]Tenn. Code Ann. §§ 30-2-315(c), -320 (2007); 2 Pritchard 6th §§ 805-806.

[46]Tenn. Code Ann. § 30-2-313 (2007).

request that the probate proceedings be closed.[47] The report must be served on all interested parties,[48] and parties desiring to file exceptions to the personal representative's final accounting or report of final settlement may do so.[49] After the probate court resolves any exceptions to the personal representative's final accounting or settlement of the estate, any dissatisfied party may appeal to the Court of Appeals or to the appropriate trial court of general jurisdiction, depending on the size of the county and the judge exercising probate jurisdiction in the county.[50]

This case is an appeal from a decision of the Putnam County Probate Court, sitting without a jury, involving TennCare's claim against Ms. Trigg's estate. The estate filed an exception to the claim, and the probate court resolved it pursuant to its authority under Tenn. Code Ann. § 30-2-315. Accordingly, the party seeking an appeal from the probate court's judgment sustaining the claim – here Ms. Trigg's estate – could appeal only to the Court of Appeals in accordance with Tenn. Code Ann. § 30-2-315(b). Review in accordance with Tenn. Code Ann. § 30-2-609(b)(2) was not available because the probate court's decision being appealed from did not involve the final settlement of the estate by the personal representative.

Because the circuit court lacked subject matter jurisdiction under Tenn. Code Ann. § 30-2-609(b)(2), the Court of Appeals vacated the circuit court's judgment and affirmed the probate court's judgment. While we agree with the Court of Appeals that Ms. Trigg's estate appealed the probate court's decision to the wrong court, we do not agree with the Court of Appeals that TennCare's appeal should have been summarily dismissed.

In a similar circumstance, a party holding papers belonging to a decedent's estate appealed an adverse decision by the Probate Division of the Madison County General Sessions Court to the Circuit Court for Madison County. *In re Estate of Williams*, Madison Law No. 1, 1985 Tenn. App. LEXIS 2889, at *1 (Tenn. Ct. App. May 23, 1985). The circuit court determined that the appeal should have been filed with the Court of Appeals and dismissed the appeal for lack of subject matter jurisdiction. *In re Estate of Williams*, 1985

---

[47]Tenn. Code Ann. § 30-2-701 (2007); 2 Pritchard 6th § 857.

[48]Tenn. Code Ann. § 30-2-603 (2007).

[49]Tenn. Code Ann. § 30-2-607 (2007). At this stage of the probate proceeding, the parties may not relitigate an issue previously decided in a proceeding in which they were joined as a party. 2 Pritchard 6th § 865, at 522-23.

[50]Tenn. Code Ann. § 30-2-609.

Tenn. App. LEXIS 2889, at *1.  The Court of Appeals affirmed.  *In re Estate of Williams*, 1985 Tenn. App. LEXIS, at *13.

Even though this Court agreed that the appeal should have been taken to the Court of Appeals rather than to the circuit court, we held in a per curiam order that "it was error simply to dismiss the appeal taken by mistake to the circuit court." *In re Estate of Williams*, Madison Law (Tenn., per curiam order filed Nov. 18, 1985).  Citing Tenn. Code Ann. § 16-4-108 (1980),[51] we stated that instead of dismissing the appeal, the circuit court should have transferred the case to the Court of Appeals.  *In re Estate of Williams*, (Tenn., per curiam order filed Nov. 18, 1985).[52]  The Court of Appeals has since followed this precedent in another appeal from an order of a probate court that was filed in the wrong court.  *In re Estate of White*, 77 S.W.3d at 769.

Consistent with our 1985 order in *In re Estate of Williams*, the Court of Appeals should have vacated the circuit court's judgment and remanded the case to the circuit court with directions to transfer the case to the Court of Appeals in accordance with Tenn. Code Ann. § 16-4-108(a)(2).  Once the case was properly before it, the Court of Appeals could then have addressed the substantive issues raised by the parties.

In light of the procedural history of this case, we see nothing to be gained by remanding the case to the Court of Appeals for consideration of the issues on their merits.  The parties have already briefed these issues in this Court and have presented oral arguments to the Court.  The interests of the parties and judicial economy favor a just, speedy, and less costly resolution on the merits of the dispute regarding TennCare's claim against Ms. Trigg's estate.  Tenn. R. App. P. 36(a) vests in this Court the authority to grant relief on the law and the facts to which the parties are entitled or the proceedings otherwise require, as long as the relief does not contravene the province of the trier of fact.  Accordingly, invoking our authority under Tenn. R. App. P. 36(a),  we elect to address directly the legal issue

---

[51]Tenn. Code Ann. § 16-4-108 (1980), now codified at Tenn. Code Ann. § 16-4-108(a)(2) (2009), provides:

> All cases within the jurisdiction conferred on the court of appeals shall, for purposes of review, be taken directly to the court of appeals in the division within which the case arose, the eastern division to include Hamilton County and the western division to include Shelby County.  As to all other cases, the exclusive right of removal and review is in the supreme court.  Any case removed by mistake to the wrong court shall by that court be transferred to the court having jurisdiction of the case, direct.

[52]Even though the circuit court lacked subject matter jurisdiction to consider the estate's appeal, Tenn. Code Ann. § 16-4-108(a)(2) gave it the authority to transfer the case to the Court of Appeals.  *See Norton v. Everhart*, 895 S.W.2d 317, 319 (Tenn. 1995).

concerning TennCare's right to seek reimbursement from Ms. Trigg's estate, including real property owned by Ms. Trigg at the time of her death, for the cost of the care Ms. Trigg received during her lifetime.

## III.

Ms. Trigg's estate argues that the probate court erred by upholding TennCare's claim and by permitting TennCare to seek reimbursement for the services it provided Ms. Trigg from the real property she owned at the time of her death. The estate insists that TennCare cannot reach Ms. Trigg's real property because the Tennessee General Assembly has not enacted the expanded definition of "estate" as permitted by 42 U.S.C. § 1396p(b)(4)(B) (2006). We have determined that both federal and state law permit TennCare to reach real property owned by a TennCare recipient at the time of death to obtain reimbursement for services supplied through the TennCare program.

## A.

Title XIX of the Social Security Act of 1965 established the Medicaid program, a joint federal-state program to provide medical services to low-income persons sixty-five years of age or older, blind persons, disabled persons, and others unable to afford these services. *See Harris v. McRae*, 448 U.S. 297, 301 (1980); *In re Estate of Tanner*, 295 S.W.3d 610, 614 (Tenn. 2009). The program is jointly funded by the federal government and the states, and each state operates its own program in accordance with federal requirements. *Bell ex rel. Bell v. Tennessee Dep't of Human Servs.*, No. M2004-00526-COA-R3-CV, 2006 WL 74143, at *2 (Tenn. Ct. App. Jan. 12, 2006) (No Tenn. R. App. P. 11 application filed).

Tennessee began participating in the Medicaid program when the Tennessee General Assembly enacted the Medical Assistance Act of 1968.[53] In order to control costs, this Act authorized the State to recover from the estates of deceased Medicaid recipients who were sixty-five years or older at the time they received Medicaid benefits.[54] *See In re Estate of Tanner*, 295 S.W.3d at 614.[55]

---

[53] Act of Apr. 3, 1968, ch. 551, 1968 Tenn. Pub. Acts 496 (originally codified at Tenn. Code Ann. §§ 14-1901 to -1922 (Supp. 1968)) (codified as amended at Tenn. Code Ann. §§ 71-5-101 to -119 (2004 & Supp. 2011)).

[54] Act of Apr. 3, 1968, ch. 551, § 16, 1968 Tenn. Pub. Acts 496, 502-03.

[55] At that time, federal law permitted but did not require states to recover properly paid medical benefits from a recipient's estate. *See* 42 U.S.C. § 1396p(b)(1) (1988).

Over time, the cost of the Medicaid program to the federal government and the states increased dramatically. *See* James F. Blumstein & Frank A. Sloane, *Health Care Reform Through Medicaid Managed Care: Tennessee (TennCare) as a Case Study and a Paradigm*, 53 Vand. L. Rev. 125, 140 (2000). Responding to these increases, Congress included a provision in the Omnibus Budget Reconciliation Act of 1993 requiring the states to recover the cost of Medicaid benefits from the estates of certain Medicaid recipients. Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, § 13612(a), 107 Stat. 312, 627-28; *see In re Estate of Tanner*, 295 S.W.3d at 614-15.

In an effort to control costs and to use Medicaid funds more efficiently, Tennessee created the TennCare program and obtained permission from the Federal Heathcare Financing Administration to begin operating the program on January 1, 1994. *See State ex rel. Pope v. Xantus Healthplan of Tenn., Inc.*, No. M2000-00120-COA-R10-CV, 2000 WL 630858, at *2 (Tenn. Ct. App. May 17, 2000) (No Tenn. R. App. P. 11 application filed). TennCare replaced the former fee-for-service plan with a mandatory managed care plan. *See In re Estate of Tanner*, 295 S.W.3d at 615; *State ex rel. Pope v. Xantus Healthplan of Tenn., Inc.*, 2000 WL 630858, at *2.

The Tennessee General Assembly enacted the TennCare Reform Act in 2002.[56] In this Act, the General Assembly pointedly stated that "[i]t is the legislative intent of this subsection that the bureau of TennCare strive vigorously to recoup any TennCare funds expended for a decedent after the date of death."[57] In 2006, the General Assembly again amended the TennCare statutes to facilitate and strengthen TennCare's ability to recover the cost of the care it provided from decedents' estates.[58]

---

[56]Act of July 4, 2002, ch. 880, 2002 Tenn. Pub. Acts 2422.

[57]Act of July 4, 2002, ch. 880, § 9(1), 2002 Tenn. Pub. Acts 2422, 2425-26 (codified as amended at Tenn. Code Ann. § 71-5-116(d)(2) (Supp. 2011)). Tenn. Code Ann. § 71-5-116(d)(2) currently states that "[i]t is the legislative intent of subdivision (d)(1) that, after the date of death, the bureau of TennCare strive vigorously to recoup any TennCare funds expended for a decedent during the decedent's lifetime."

[58]Act of May 1, 2006, ch. 639, §§ 2, 3, 2006 Tenn. Pub. Acts 1722, 1723-24 (codified at Tenn. Code Ann. § 71-5-116 (Supp. 2011)). *See also In re Estate of Tanner*, 295 S.W.3d at 615-16. Even though these amendments were enacted in 2006, they did not take effect until January 1, 2007. Accordingly, the 2006 amendments do not apply in this proceeding because Ms. Trigg died on August 5, 2006, prior to the effective date of the amendments. *See In re Estate of Tanner*, 295 S.W.3d at 615-16.

**B.**

We assume for the purposes of this appeal that TennCare had the statutory authority to recover the payments it made for Ms. Trigg's medical care during her life.[59] Both federal and state law limit TennCare's ability to recover from the assets in Ms. Trigg's "estate." *See* 42 U.S.C. § 1396p(b)(1)(B) (2006); Tenn. Code Ann. § 71-5-116(c) (2004). Accordingly, the pivotal question becomes – what property is included in Ms. Trigg's estate?

Fortunately, Congress has now provided some guidance to the courts by defining "estate" for purposes of recovering payments under the Medicaid program.[60] 42 U.S.C. § 1396p(b)(4) explains that

> [f]or purposes of this subsection, the term "estate", with respect to a deceased individual–
>
> (A) shall include all real and personal property and other assets included within the individual's estate, as defined for purposes of State probate law; and
>
> (B) may include, at the option of the State (and shall include, in the case of an individual to whom paragraph (1)(C)(i) applies), any other real and personal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement.

---

[59]The current record is unclear on this point, and it was apparently a contested issue in the proceedings below. This issue should be addressed definitively on remand to the probate court.

[60]In 1993, Congress added this definition of "estate" to 42 U.S.C. § 1396p as a result of disagreement among federal judges regarding the scope of the term. *See, e.g., Citizens Action League v. Kizer*, 887 F.2d 1003 (9th Cir. 1989). The majority in that case held that for the purpose of recovering Medicaid benefits, the word "estate" did not include property formerly held in joint tenancy by the deceased Medicaid recipient. *Citizens Action League v. Kizer*, 887 F.2d at 1008. The dissent disagreed, advocating a broader interpretation of the word "estate." *Citizens Action League v. Kizer*, 887 F.2d at 1008-09 (Canby, J., dissenting). Following 1993, 42 U.S.C. § 1396p(b)(4)(B) (1994) permitted states, at their option, to seek recovery from property conveyed by the deceased Medicaid recipient to any person "through joint tenancy, tenancy in common, survivorship, life estate, living trust, or another arrangement."

The parties have joined issue on the meaning of "estate" under Tennessee's probate law. Believing that Ms. Trigg's real property was not part of the probate proceeding, Ms. Trigg's estate insists that the "estate" consists only of her personal property. For its part, TennCare asserts that both Congress and the Tennessee General Assembly intended the term "estate" to be "very expansive and include[] all real and personal property in which the individual benefit recipient had a legal title or interest."

The word "estate" is a very comprehensive term in the context of wills and probate proceedings. *See Belshe v. Hope*, 38 Cal. Rptr. 2d 917, 925 (Cal. Ct. App. 1995). Both the United States Supreme Court and this Court, characterizing the word as "genus generalissimum,"[61] have found that it includes both real and personal property. *Lambert's Lessee v. Paine*, 7 U.S. (3 Cranch) 97, 110, 134 (1805); *Sharp v. Cincinnati, N.O. & T.P. Ry.*, 133 Tenn. 1, 8, 179 S.W. 375, 377 (1915). It is so well-understood that the Supreme Court of Virginia has noted that "[t]he wayfaring man who was told that one's estate amounted to a certain sum would have little hesitancy in determining in his own mind what was meant." *Neblett v. Smith*, 128 S.E. 247, 250 (Va. 1925).

The word "estate" is now "broadly used [in Tennessee] to include both realty and personalty." *Haskins v. McCampbell*, 189 Tenn. 482, 488, 226 S.W.2d 88, 91 (1949). Thus, when the word appears in a will, without limitations or qualifications, Tennessee's courts construe it to include "every description of property," *Nashville Trust Co. v. Grimes*, 179 Tenn. 567, 572, 167 S.W.2d 994, 996 (1943); *see also Gourley v. Thompson*, 34 Tenn. (2 Sneed) 387, 393 (1854), that is descendible, *Taul v. Campbell*, 15 Tenn. (7 Yer.) 319, 324 (1835).

In Tennessee, title to real property owned by a testate decedent at the time of death vests immediately in the devisees named in the will unless the will specifically directs that the property be part of the estate under the control of the executor. Tenn. Code Ann. § 31-2-103 (2007); *see also* 2 Pritchard 6th § 634, at 146. However, the fact that the title to the real property vests immediately does not necessarily mean that the real property cannot be subject to the probate proceeding in some circumstances.

Tennessee recognizes the distinction between interests in real property that pass "by right of survivorship" and those that pass by "devise or descent." Real property jointly

---

[61]The phrase "genus generalissimum" was "employed by the logicians of old, to indicate the name of any one of those aggregates which is not contained in any other aggregate that hath as yet received a name." 8 John Bowring, *The Works of Jeremy Bentham* 263 (Edinburgh, William Tait 1843). In the legal world, the most common meaning of "genus" is that it connotes "[a] general class comprising several species or divisions . . . . For example, patent law is a species within the genus of intellectual property; burglary is a species within the genus of crime." *Black's Law Dictionary* 708 (8th ed. 2004).

owned by a decedent with others with a right of survivorship and real property owned by the entirety are not part of the probate estate administered by the decedent's personal representative in the probate proceeding. 2 Pritchard 6th § 630, at 142. On the other hand, interests in real property that pass by devise or descent can be reached by the decedent's personal representative to pay the decedent's or the estate's debts if the decedent's personal property is insufficient to pay these debts. Tenn. Code Ann. § 31-2-103; Tenn. Code Ann. § 30-2-401 (2007); *In re Estate of Vincent*, 98 S.W.3d 146, 149 (Tenn. 2003); 2 Pritchard 6th § 801, at 405.

In light of the broad and common understanding of the word "estate," we have determined that "estate," for the purpose of 42 U.S.C. § 1396p and Tenn. Code Ann. § 71-5-116, includes not only the personal property owned by a TennCare recipient at the time of death, but also the recipient's interests in real property that are properly subject to the payment of the deceased recipient's debts should the recipient's personal property be insufficient to pay these debts, including the debt to TennCare. Any real property that can be reached by the personal representative pursuant to Tenn. Code Ann. §§ 30-2-401 and 31-2-103 for the payment of the debts of an insolvent estate may be reached by the probate court for the purpose of reimbursing TennCare for the properly paid medical care provided to a deceased recipient in accordance with Tenn. Code Ann. § 71-5-116.[62]

The record in this case, such as it is, reflects that Ms. Trigg owned real property at the time of her death and that she left this property in her will to Susan and Mark Shaw. The Shaws did not assert any sort of joint survivorship interest in the property. Therefore, on the face of the record, the real property owned by Ms. Trigg at the time of her death is not beyond the reach of the probate court to be used for the payment of her debts, including the debt to TennCare, if her personal property was not sufficient to do so. Accordingly, at least as far as this record shows, the probate court correctly concluded that Ms. Trigg's real property was subject to TennCare's claim for reimbursement.

---

[62]By enacting 42 U.S.C. § 1396p(b)(4)(B), Congress determined that the states may obtain reimbursement for Medicaid benefits from any jointly-held survivorship interests in property that the deceased recipient held at the time of death. Ms. Trigg's estate argues that TennCare cannot recover such interests because the General Assembly has not enacted an "expanded" definition of "estate" that would permit TennCare to take advantage of the "expanded recovery option" permitted by 42 U.S.C. § 1396p(b)(4)(B). We need not address this question here because the property at issue in this case is not a jointly held interest in property with a right of survivorship. The interest at issue here is real property owned solely by Ms. Trigg at the time of her death which Ms. Trigg devised in her will to Susan and Mark Shaw. The question of whether the General Assembly must enact an expanded definition of "estate" before TennCare may seek reimbursement from a deceased recipient's jointly held property with survivorship rights must await another case.

**IV.**

In summary, we find that the Court of Appeals reached the correct result when it affirmed the judgment of the Putnam County Probate Court.[63] Accordingly, we remand this case to the probate court for further proceedings consistent with this opinion. We tax the costs of this appeal in equal proportions to the estate of Ardell Hamilton Trigg and the Tennessee Bureau of TennCare for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE

---

[63] This Court may affirm the judgment on grounds different from those relied upon by the lower courts when the lower courts have reached the correct result. *State v. Hester*, 324 S.W.3d 1, 21 n.9 (Tenn. 2010); *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Hopkins v. Hopkins*, 572 S.W.2d 639, 641 (Tenn. 1978).