IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 4, 2018 Session

IN RE ESTATE OF MARY RUTH DAVIS HUDSON

Appeal from the Chancery Court for Knox County
No. 77688-2     Clarence E. Pridemore, Jr., Chancellor

No. E2018-00583-COA-R3-CV

In this estate proceeding, the appellants, three of the five adult children of the decedent, appeal the probate court's interpretation of the decedent's last will and testament as demonstrating the decedent's intent to have her real property administered as part of her estate by her personal representative. Having determined that the probate court's order was premature due to ongoing proceedings in the decedent's conservatorship case, we vacate the probate court's order interpreting the last will and testament. We remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Vacated; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Marilyn L. Hudson, Knoxville, Tennessee, Pro Se and for co-appellants, Stephen D. Hudson and Lou Ann Hudson.

Steven K. Bowling, Knoxville, Tennessee, for the appellee, Steven K. Bowling, Administrator C.T.A. for the Estate of Mary Ruth Davis Hudson.

Harry E. Hudson, Jr., Stockton, California, Pro Se appellee.[1]

---

[1] Upon an unopposed motion filed by appellee Carol S. Hudson, represented by Keith H. Burroughs and Rameen J. Nasrollahi of Knoxville, Tennessee, this Court granted permission for Carol S. Hudson to be dismissed as a party in an order entered on December 6, 2018.

## OPINION

### I. Factual and Procedural Background

The decedent, Mary Ruth Davis Hudson ("Decedent"), died on May 2, 2016, at the age of ninety-two. At the time of her death, Decedent had five living adult children, who were all named as beneficiaries in her last will and testament ("the Will"), which had been executed on May 7, 2014. Decedent's eldest child, Harry E. Hudson, Jr. ("Harry Hudson"), was named as personal representative in the Will and filed a petition to probate the Will in the Probate Division of the Knox County Chancery Court ("probate court") on May 18, 2016. In the petition, Harry Hudson stated, *inter alia*, that "Article Five of decedent's Will requires that the decedent's real estate be handled as property subject to decedent's Will." Decedent's real property consisted of a home and residential lot located at 4601 Millertown Pike in Knoxville ("the Property"). The appellants in the instant action are three of Decedent's children: Marilyn L. Hudson ("Marilyn Hudson"), Stephen D. Hudson ("Stephen Hudson"), and Lou Ann Hudson (collectively, "Appellants"). Acting through then-counsel Andrea C. Anderson and Marshall H. Peterson, Appellants filed a response to the petition, objecting to the appointment of Harry Hudson as personal representative, nominating Marilyn Hudson as personal representative, and asserting, *inter alia*, that "[t]he Will does not specifically subject the real property to the Executor's control pursuant to Tenn. Code Ann. Section § 31-2-103."

At the time of the probate petition's filing, Decedent's children were embroiled in a dispute over Decedent's conservatorship, particularly with regard to the final accounting and payment of attorney's fees. *See In re Conservatorship of Hudson*, No. E2017-00810-COA-R3-CV, 2018 WL 3814850 (Tenn. Ct. App. Aug. 10, 2018). As noted in this Court's opinion concerning the conservatorship, Harry Hudson resides in Stockton, California, and is an attorney practicing law in California while Marilyn Hudson is an attorney practicing law in Tennessee. *See id.* at *1. During the conservatorship proceedings, Decedent's youngest child, Carol S. Hudson ("Carol Hudson"), had joined with Harry Hudson in opposing the original petition to establish a conservatorship, which had been filed by Appellants. *Id.* The Knox County Chancery Court ("conservatorship court") established the conservatorship, appointing Lou Ann Hudson as the conservator over Decedent's person and, eventually, the East Tennessee Human Resources Agency ("ETHRA") as the conservator over Decedent's finances. *Id.*

Following Decedent's death, the conservatorship court entered an order transferring Appellants' outstanding motions for attorney's fees to the probate court and closing the conservatorship without making findings of fact concerning Appellants' objections to the final accounting. *Id.* Upon Appellants' appeal of the conservatorship court's judgment, this Court vacated the judgment and remanded to the conservatorship

2

court "for entry of findings of fact and conclusions of law concerning the petitioners' objections to the final accounting and concerning whether the attorney's fees requested in the petitioners' counsel's pending attorney's fee motions were incurred in relation to the conservatorship and, if so, whether reasonable attorney's fees should be granted upon each of these motions." *Id.* This Court also directed the conservatorship court to enter an order on remand to grant Appellants' request that ETHRA "present a detailed explanation of the basis for its representative's claim for fees and expenses for the conservatorship court's consideration . . . ." *Id.* During oral argument in this appeal in the probate action, the parties clarified that the conservatorship proceedings were still pending on remand.

Meanwhile, in the instant action, the probate court entered an agreed order on September 13, 2016, admitting the Will to probate and appointing attorney Steven K. Bowling as administrator, C.T.A. ("Administrator").[2] The probate court also admitted a holographic "Property List," executed by the Decedent as a codicil and setting forth Decedent's desired distribution of specific items of personal property. The codicil was accompanied by three affidavits attesting to the authenticity of Decedent's handwriting, executed respectively by Harry Hudson, Stephen Hudson, and Carol Hudson. The authenticity of the Will and codicil is not in dispute.

Upon Appellants' motion, the probate court entered an order on December 9, 2016, substituting Marilyn Hudson in place of Mr. Peterson to represent herself *pro se* and as counsel for Stephen Hudson and Lou Ann Hudson. Following various claims filed against Decedent's estate ("the Estate"), including several concerning attorney's fees purportedly incurred in relation to the conservatorship, Administrator filed a "Motion for Disposition of Real Property" on May 22, 2017. In his motion, Administrator stated that the Property had been recently valued by a real estate agent at $122,500.00, although the appraised value had been increased to $162,700.00. Administrator noted that considering the claims outstanding against the Estate, it was "entirely possible" that the Estate would become insolvent. Administrator requested that upon interpretation of Article V of the Will, the probate court either allow the sale of the Property or the conveyance of title to the Property jointly to Decedent's beneficiaries.

---

[2] As this Court has explained:

> "C.T.A." is an acronym for *cum testamento annexo*, meaning "with the will annexed." *See In re Estate of Hendrickson*, No. M2008-01332-COA-R9-CV, 2009 WL 499495, at *2 n.2 (Tenn. Ct. App. Feb. 25, 2009) (citation omitted). An Administrator C.T.A. is appointed by a court "when the testator has named no executor, or the executors named refuse, are incompetent to act, or have died before performing their duties." *Black's Law Dictionary* 49 (8th ed. 2004).

*In re Estate of Link*, No. M2016-02202-COA-R3-CV, 2017 WL 4457591, at *1 n.1 (Tenn. Ct. App. Oct. 5, 2017).

3

While Administrator in his motion for disposition focused on the construction of Article V of the Will, the clerk and master in his report and the parties on appeal have also emphasized the construction of Articles Two, Four, and Seven. In relevant part, the Will provides:

## ARTICLE TWO

I direct that all my just debts, taxes, and expenses of the administration of my estate be paid without unnecessary delay by my Personal Representative hereinafter named and appointed out of the residue of my estate. However, payment shall be authorized only for those debts which are valid and enforceable and not subject to any defense, substantive or procedural. It shall not be necessary to file any claims therefore nor to have them allowed by any Court. In the event that my residuary estate is insufficient to pay such debts, expenses, costs and taxes, I direct that the amount in excess of my residuary estate shall be paid from assets in the order provided by law.

* * *

## ARTICLE FOUR

Notwithstanding anything contained herein to the contrary, certain specific articles of personal property shall be distributed in accordance with the provisions of a certain list written entirely in my handwriting and signed by me which is attached hereto and is incorporated herein by reference, and I direct that my Personal Representative distribute these items in accordance with my handwritten request.

## ARTICLE FIVE

I direct that all my remaining assets are to be liquidated, and I give, devise, and bequeath all the remaining property that I may own at the time of my death whether real, personal, mixed, tangible, and intangible of whatsoever nature and wherever situated including all property that I may acquire or become entitled to after the execution of this Will to my children, HARRY E. HUDSON, JR., MARILYN L. HUDSON, STEPHEN D. HUDSON, LOU ANN HUDSON, and CAROL S. HUDSON, in equal shares. If any of them should die before me, then I give his or her share to the survivors of them in equal shares.

4

* * *

<u>ARTICLE SEVEN</u>

I confer upon my Personal Representative full power to do any act, matter, or thing that I might or could do if living and acting on my own behalf and exercise any and all powers of such fiduciary enumerated in <u>Tennessee Code Annotated</u> as amended to the date of my death. . . .

As noted in the clerk and master's report, the codicil "sets forth thirty (30) individually numbered specific paragraphs, all written in the decedent's hand and signed by her on June 12, 2014, itemizing the distributions of personal property to be made to specifically named family members."

Following a hearing conducted on July 13, 2017, the trial court entered an agreed order on August 4, 2017, *inter alia*, setting the motion for disposition of the Property for hearing on August 21, 2017, and memorializing an agreed deadline for written objections to the motion of July 31, 2017. In a response filed on July 31, 2017, Appellants requested that the trial court deny the motion insofar as Administrator sought authority to liquidate the Property and grant the motion insofar as Administrator sought to convey title of the Property to Decedent's children. Relying on Tennessee Code Annotated § 31-2-103, Appellants argued that "the real property immediately vested in the named beneficiaries in equal shares and that the Will did not grant authority to the Administrator to sell said property." Appellants also asserted that any statement as to potential insolvency of the Estate was premature.

Acting through her individual counsel, Keith H. Burroughs, Carol Hudson also filed a response to Administrator's motion on July 31, 2017. Harry Hudson then filed a *pro se* response to the motion on August 15, 2017. In contrast to Appellants, both Carol Hudson and Harry Hudson argued in favor of interpreting the Will as providing for the liquidation of the Property under Administrator's authority.

Clerk and Master Howard G. Hogan conducted the hearing on August 21, 2017, with Administrator, Appellants, and Carol Hudson and her counsel appearing. Harry Hudson did not appear. On August 31, 2017, the clerk and master submitted a "Master's Report," concluding that "the language and phrases in the will and codicil demonstrate that the decedent intended that her residence be administered as part of her estate subject to the personal representative's control and that she did not intend the title to her residence to vest immediately in her children." Specifically in response to Appellants'

5

argument that Decedent's real property vested in her beneficiaries at the time of her death, the clerk and master stated:

> The Clerk and Master has considered the argument and authority from [Appellants] who assert and argue that title vested in them at death by the words in Article Five which provide "I give, devise and bequeath all the remaining property that I may own at the time of my death whether real, personal, mixed, tangible, and intangible of whatsoever nature and wherever situated including all property that I may acquire or become entitled to after the execution of this will to my children . . . in equal shares." However, such construction totally disregards the beginning preceding phrase "I direct that all my remaining assets are to be liquidated" and fails to take into consideration all of the other Articles of the will or the codicil. Respectfully, the decedent's entire will must be considered and the entire testamentary scheme and dominant purpose of the decedent expressed in Article Two, Article Four, Article Six, Article Seven and the codicil is to distribute the tangible personal property as directed and then to "liquidate" the remainder to reduce it to cash and divide the estate into five (5) equal shares after paying the claims and debts of the estate.

In his report, the clerk and master recommended that the trial court enter an order providing:

> (1)     That Article Five of the decedent's will shall be construed and interpreted as follows:
>
>> I hereby direct that after distribution of my tangible personal property under the above Article Four and the handwritten list, my personal representative shall sell and liquidate all of the rest and remainder of my property, including my residence and any other real, personal, mixed, tangible, and intangible property of whatsoever nature and wheresoever situated, including any property that I may acquire or become entitled to after the execution of this will, and for the purpose of reducing my remaining estate to liquid form, I specifically direct that any real property be administered as part of my probate estate subject to the control of the personal representative for the purposes of administration as authorized by T.C.A. § 31-2-103 and that my personal representative shall have such

6

power of sale as I have as the absolute owner would have, including the right to sell, mortgage, lease or otherwise convey any interest in real estate without the signature, consent or approval of any heir, legatee, beneficiary, court or other person as set out in T.C.A. § 35-50-110 as hereinafter incorporated and after liquidating all assets and after paying all the claims, debts and expenses in my estate as provided in Article Two, my personal representative is directed to divide the remaining amounts into five (5) equal shares for distribution to my children, [Harry] E. Hudson, Jr., Marilyn L. Hudson, Stephen D. Hudson, Lou Ann Hudson and Carol S. Hudson, and if any of my children should die before me, then I give his or her share to the survivors of them in equal shares.

(2)     That the Administrator CTA, Attorney Steven K. Bowling, is hereby authorized and directed to complete this administration under the above construed article; and

(3)     that all other matters are reserved.

On September 26, 2017, Appellants filed an objection to the Master's Report, reiterating their argument that Decedent's real property had vested in her beneficiaries at the time of her death. Carol Hudson filed a challenge to the timeliness of Appellants' objection. Following a hearing on the objection and challenge, conducted by the probate court chancellor on January 22, 2018, the probate court dismissed Appellants' objection as untimely, pursuant to Tennessee Rule of Civil Procedure 53.04(2) and Rule 19 of the Local Rules of Practice for Knox County Chancery Court, in an order entered on March 2, 2018. *See* Tenn. R. Civ. P. 53.04(2) ("Within ten (10) days after being served with notice of the filing of the [master's] report, any party may serve written objections thereto upon the other parties.").

The probate court subsequently entered an "Order of Confirmation" on March 21, 2018, *nunc pro tunc* to January 22, 2018. Upon "independent review of the Master's Report" and finding that "no timely exceptions or objections [had] been filed," the probate court approved and confirmed the Master's Report. The probate court adopted the interpretation of Article Five of the Will as recommended in the Master's Report and "authorized and directed" Administrator "to complete this administration under" Article Five as constructed in the order. Appellants filed a notice of appeal on April 2, 2018, timely to the date of entry of the confirmation order. Administrator subsequently filed in

the probate court, *inter alia*, a "Notice of Insolvency and Proposed Plan of Distribution" on May 29, 2018. Appellants responded by filing an objection to the notice of insolvency, asserting that the notice was premature because the Estate was not insolvent, the conservatorship had not been resolved following remand from this Court, and the instant appeal was pending.

## II. Issue Presented

Appellants present one issue on appeal, which we have restated slightly as follows:

> Whether the probate court erred by construing the language of the Will as conferring authority on Administrator to sell Decedent's real property.

## III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). Likewise, construction of a will is a matter of law, for which we review the trial court's conclusions *de novo* with no presumption of correctness. *In re Estate of Milam*, 181 S.W.3d 344, 353 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Oct 3, 2005); *In re Estate of Schubert*, No. E2014-01754-COA-R3-CV, 2015 WL 4272192, at *4 (Tenn. Ct. App. July 15, 2015) (citing *Horadam v. Stewart*, No. M2007-00046-COA-R3-CV, 2008 WL 4491744, at *5 (Tenn. Ct. App. Oct. 6, 2008)).

## IV. Effect of Unresolved Conservatorship

Appellants' sole issue raised on appeal is whether the probate court erred by construing the language of the Will as conferring authority on Administrator to sell Decedent's real property. However, upon careful review, we determine the dispositive issue to be whether the pending conservatorship proceedings render the probate court's construction of the Will as it pertains to the Property to be premature, particularly considering the notice of insolvency filed by Administrator. Because a decision from this Court on such a premature judgment would run the risk of being advisory in nature, we will address the effect of the unresolved conservatorship as a threshold matter. *See* Tenn. R. App. P. 13(b); *Thomas v. Shelby Cty.*, 416 S.W.3d 389, 393 (Tenn. Ct. App. 2011),

*perm. app. denied* (Tenn. Dec. 13, 2011) ("It is well-settled that the role of the court is to adjudicate and settle legal rights, not to give abstract or advisory opinions.").

In support of their argument that upon Decedent's death, the Property vested immediately in the beneficiaries of Decedent's Will and does not therefore come under the authority of Administrator, Appellants rely on Tennessee Code Annotated § 31-2-103 (2015), which provides as pertinent to testate decedents:

> The real property of a testate decedent vests immediately upon death in the beneficiaries named in the will, unless the will contains a specific provision directing the real property to be administered as part of the estate subject to the control of the personal representative. Upon qualifying, the personal representative shall be vested with the personal property of the decedent for the purpose of first paying administration expenses, taxes, and funeral expenses and then for the payment of all other debts or obligations of the decedent as provided in § 30-2-317. <u>If the decedent's personal property is insufficient for the discharge or payment of a decedent's obligations, the personal representative may utilize the decedent's real property in accordance with title 30, chapter 2, part 4</u>. After payment of debts and charges against the estate, the personal representative shall distribute the personal property . . . of a testate decedent to the distributees as prescribed in the decedent's will.

(Emphasis added.) Tennessee Code Annotated § 30-2-401 (2015) provides in relevant part that "[t]he probate court shall have concurrent jurisdiction with the chancery and circuit courts to sell real estate of decedents and for distribution or partition . . . ."

As Appellants have acknowledged, under the facts of this case and pursuant to Tennessee Code Annotated § 31-2-103, if the Estate in this action is insolvent, Administrator may utilize the Property to discharge or pay the debts of the Estate. As our Supreme Court has explained:

> In Tennessee, title to real property owned by a testate decedent at the time of death vests immediately in the devisees named in the will unless the will specifically directs that the property be part of the estate under the control of the executor. Tenn. Code Ann. § 31-2-103 (2007); *see also* 2 [Jack W. Robinson, Sr., et al.,] *Pritchard* [*on the Law of Wills and Administration of Estates*] § 634, at 146 [(6th ed. 2007)]. However, the fact that the title to the real property vests immediately does not necessarily mean that the real property cannot be subject to the probate proceeding in some circumstances.

9

Tennessee recognizes the distinction between interests in real property that pass "by right of survivorship" and those that pass by "devise or descent." Real property jointly owned by a decedent with others with a right of survivorship and real property owned by the entirety are not part of the probate estate administered by the decedent's personal representative in the probate proceeding. 2 Pritchard 6th § 630, at 142. On the other hand, interests in real property that pass by devise or descent can be reached by the decedent's personal representative to pay the decedent's or the estate's debts if the decedent's personal property is insufficient to pay these debts. Tenn. Code Ann. § 31-2-103; Tenn. Code Ann. § 30-2-401 (2007); *In re Estate of Vincent*, 98 S.W.3d 146, 149 (Tenn. 2003); 2 Pritchard 6th § 801, at 405.

*In re Estate of Trigg*, 368 S.W.3d 483, 501-02 (Tenn. 2012) (emphasis added).

In the case at bar, Appellants appeal the probate court's decision rendered upon Administrator's May 2017 motion for disposition of the Property. In this motion, Administrator stated that it was "entirely possible" that the Estate would become insolvent. Administrator also noted in this motion that the conservatorship action was at that time pending on appeal and remained unresolved with no funds transferred from the conservatorship to the Estate. In an interim accounting filed a few days before the May 2017 motion, Administrator indicated a balance in the Estate account in the amount of $44,073.37, and noted that several claims against the Estate were still pending.

In their objection to the motion for disposition of the Property, Appellants asserted that any statement made by Administrator as to the potential insolvency of the Estate was premature in part because of the unresolved conservatorship action. Appellants maintained that funds from the conservatorship would eventually add to the solvency of the Estate. At this point in the proceedings, the clerk and master conducted the August 2017 hearing on Administrator's motion for disposition and entered findings interpreting the disposition of the Property according to the Will, which the probate court chancellor ultimately confirmed. In relation to the Property's distribution, the probate court did not address, either in the Master's Report or the chancellor's order of confirmation, the effect of the unresolved conservatorship action or of Administrator's notice that the Estate was in danger of insolvency.

Subsequently, in filing a notice of insolvency and proposed distribution plan, Administrator stated that the conservatorship action still remained pending and that the Estate had "received no funds from the Conservator." In the notice and attached interim accounting, Administrator indicated a cash balance in the Estate of $1,817.82 and set

forth a plan of distribution following the sale of the Property. Administrator proposed that funds from the sale of the Property would go to pay a total of $9,000.15 in estimated administrative costs; $1,864.15 in property tax and state and federal income tax; $12,329.00 to unsecured creditors (claims already approved or final); and $34,484.70 to attorney's fee claims still pending from the conservatorship action. According to Administrator in this notice, the estimated administrative expenses, claims, and obligations added to a total amount of $57,678.00. Administrator further proposed that remaining cash from the sale of the Property would be distributed in equal shares to the beneficiaries. In Administrator's initial motion for disposition of the Property, he had stated that the Property had been recently valued by a real estate agent at $122,500.00 while the appraised value was $162,700.00.

In their reply brief on appeal, Appellants point out that they filed an objection to Administrator's notice of insolvency as premature and as in error because Appellants believed that once the conservatorship was resolved, the Estate would be solvent without any need for the Administrator to sell the Property to pay the Estate's debts. *See* Tenn. Code Ann. § 31-2-103; *In re Estate of Trigg*, 368 S.W.3d at 502. The problem for resolution of the instant appeal is that, as Appellants correctly note, "[i]n light of the inability of the probate court to ascertain the funds in the probate estate, it must first know the amount of funds in the conservatorship." Appellants have made this statement in support of their assertion that Administrator's notice of insolvency was premature. However, given that Administrator also notified the probate court of the pressing danger of insolvency in the May 2017 motion for disposition and given that the conservatorship remained unresolved both at that time and at the time of this appeal, we determine that the probate court's order of confirmation and the underlying Master's Report were premature.

Until the probate court is able to determine whether the Estate is solvent and thereby whether the Administrator will need to reach the Property in order to pay the debts of the Estate, *see* Tenn. Code Ann. § 31-2-103, it would be premature to order either the sale of the Property by Administrator or the vesting of title in the Property to the beneficiaries. The conservatorship must be resolved first with any funds remaining in the conservatorship transferred to the Estate before the claims against the Estate may be resolved and the disposition of the Property determined. *See In re Conservatorship of Hudson*, 2018 WL 3814850, at *11 ("If [on remand] the conservatorship court finds that Petitioners' requested fees or a portion of those fees are warranted within the conservatorship proceedings, the conservatorship court should enter a corresponding money judgment or judgments, which may be pursued further by Petitioners or their counsel in probate court if sufficient funds are no longer available from the conservatorship." (citing as an example *In re Blessing*, No. 01A01-9712-CH-00691, 1998 WL 862480, at *12 (Tenn. Ct. App. Dec. 14, 1998))).

Administrator requests that this Court affirm the probate court's interpretation of the Will and grant of his motion to dispose of the Property by liquidating it and distributing the proceeds. Appellants request that this Court reverse the probate court's interpretation of the Will to determine that the Property vested in the beneficiaries at the time of the Decedent's death and should not be within Administrator's authority to liquidate barring a finding that the Estate is insolvent. Upon a thorough review of the record and applicable authorities, we determine that because of the pending resolution of Decedent's conservatorship and Administrator's notice to the probate court that the Estate may be insolvent once the conservatorship is resolved, any decision from this Court concerning the construction of the Will would be advisory at this time. We therefore make no determination regarding the specific issue raised by Appellants. *See Thomas*, 416 S.W.3d at 393 ("[T]he role of the court is to adjudicate and settle legal rights, not to give abstract or advisory opinions."). However, having determined that the probate court's order authorizing Administrator to liquidate the Property was premature pending resolution of the conservatorship, we vacate the probate court's order confirming the Master's Report and remand to the probate court for further proceedings.

## V. Attorney's Fees on Appeal

In the conclusion sections of their respective briefs, Appellants and Administrator have each respectively requested an award of attorney's fees on appeal. However, neither Appellants nor Administrator included attorney's fees on appeal as an issue presented to this Court. "'Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4)' in order to be properly before this Court." *Gibson v. Bikas*, 556 S.W.3d 796, 810 (Tenn. Ct. App. 2018) (quoting *In re Estate of Burke*, No. M2012-01735-COA-R3-CV, 2013 WL 2258045, at *6 (Tenn. Ct. App. May 21, 2013)). We note that this Court's decision regarding whether to award attorney's fees on appeal is a discretionary one. *Young v. Barrow*, 130 S.W.3d 59, 66-67 (Tenn. Ct. App. 2003), *perm. app. denied* (Tenn. Jan. 26, 2004). Because the issue is not properly before this Court on appeal, we cannot consider either request for attorney's fees on appeal. *See, e.g., Gibson*, 556 S.W.3d at 810.

## VI. Conclusion

For the reasons stated above, we vacate, in its entirety, the probate court's March 2018 order confirming the clerk and master's report. We remand for further proceedings consistent with this opinion as the conservatorship action comes to a close. Costs on appeal are taxed to the Estate of Mary Ruth Davis Hudson, with the appellee, Steven K.

Bowling, in his capacity as Administrator C.T.A. of Decedent's Estate, instructed to remit payment of said costs.

_____
THOMAS R. FRIERSON, II, JUDGE