IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 16, 2025 Session

**IN RE NICK CHARLES VERGOS**

**Appeal from the Probate Court for Shelby County**
**No. PR-014989-II   Joe Townsend, Judge**

_____

**No. W2024-00610-COA-R3-CV**

_____

Because the Shelby County Probate Court had no subject-matter jurisdiction over this breach of contract case, we vacate the probate court's order and remand with instruction to transfer the matter to the Shelby County Chancery Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Vacated and Remanded with Instruction**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ANDY D. BENNETT, J., joined.

John Frederick Heflin and John James Heflin, III, Memphis, Tennessee, for the appellant, Jenny Mallery Vergos.

Jef Feibelman and Jennifer Shorb Hagerman, Memphis, Tennessee, for the appellee, Charles Vergos Rendezvous, Inc.

**OPINION**

**I. Background**

Appellee, Charles Vergos Redezvous, Inc. ("CVR"), owns and operates the Rendezvous Restaurant in Memphis. Tina Vergos Jennings, John Vergos, and Nick Vergos (together the "Siblings") are Charles Vergos' children. Along with their mother, Anastasia, the Siblings constituted the board of directors of CVR. The 2004 CVR Shareholders' Agreement provided, at Section 5.02, that a shareholder may not transfer CVR stock, unless such transfer is approved by the other CVR Shareholders, or the transfer is to a permitted transferee [*i.e.*, lineal descendants of Charles and Anastasia Vergos, and certain qualified trusts]. In 2006, the Siblings entered an Amended and Restated Shareholders' Agreement, which provided, in relevant part, that the Siblings "shall receive a minimum of $200,000.00

annually ('Annual Payment') to be paid in 12 monthly payments, upon such Shareholder's retirement, disability or death, which payment may be assigned to his or her spouse."

The Siblings worked together in the business until 2015, when Tina and John asked Nick to take a leave to get counseling for alleged anger issues. On August 24, 2015, the majority of the CVR board of directors approved a board resolution titled "Written Consent of the Board of Directors of Charles Vergos Rendezvous, Inc.," by which the directors approved "the suspension of Nick Vergos as an employee of the Corporation on an indefinite basis. During the period of such suspension, Nick Vergos shall continue to receive all salary, bonuses, distributions, and related benefits on the same basis as prior to such suspension." Nick dissented (in writing) from the 2015 Written Consent as follows: "The undersigned hereby dissents from the vote regarding the suspension but consents to the taking of the aforesaid action without a meeting and waives all notice of the date, time, place and purpose of said meeting."

Nick never returned to work at CVR. In May 2016, CVR notified Nick of its intent to stop paying year-end bonuses to him; according to the complaint, Tina and John continued to receive their bonuses. Nick was diagnosed with cancer in 2018 and died on September 5, 2019. Nick's estate was opened in the Shelby County Probate Court (the "Estate"), and Nick's widow, Appellant Jenny Mallery Vergos, was named Executrix. Prior to his death, Nick assigned his right to the $200,000.00 yearly payments to Jenny. Such assignment was allowed under the 2006 Amended and Restated Shareholders' Agreement, *supra*. After Nick's death in September 2019, CVR began making payments to Jenny as Nick's assignee. However, in March 2020 (at the outset of the COVID-19 pandemic), CVR (based on the closure of the Rendezvous) ceased these payments and has not resumed them since the restaurant reopened.

On November 18, 2021, Jenny Vergos filed a "Complaint for Breach of Contract" (the "Complaint") in the Shelby County Chancery Court ("Chancery Court").[1] The Complaint, which was brought against CVR, alleged, in relevant part:

3. The causes of action asserted herein are for breach of contract and promissory estoppel over which this Court has jurisdiction pursuant to Tenn. Code Ann. §§16-11-101 and 16-11-107 and 16-11-115.

***

---

[1] Appellant also filed a second complaint in the Chancery Court. That complaint, an unauthorized shareholders' derivative action, was brought against John Vergos and Tina Vergos and was based on the same facts set out in Appellant's "Complaint for Breach of Contract." The shareholders' derivative action was transferred to the Shelby County Probate Court by the Chancery Court's *sua sponte* order entered March 9, 2023. On May 28, 2024, Appellant voluntarily dismissed the derivative lawsuit. It is not the subject of this appeal.

19. After Nick was suspended from active employment, John and Tina determined that the December, 2006 Amendment that John had drafted and had advocated had been a mistake, and began urging Nick to agree to cancelling it. John and Tina told Nick that CVR had purchased life insurance policies on John's and Tina's lives as replacement for the $200,000.00 minimum annual ($16,666.67 monthly) payments called for in the December 2006 Amendment and urged Nick to agree to accept a similar life insurance policy in exchange for cancelling the December, 2006 Amendment. After consideration of their strained relationship, Nick decided and conveyed to John and Tina that he did not want to cancel the December, 2006 Amendment. Their disagreement over the December, 2006 Amendment became an additional source of recurring heated arguments among the siblings.

20. Of course, nothing would have prevented Tina and John, as the acting management team at CVR, from purchasing life insurance coverage on Nick's life to cover all or a portion of the payments provided by the December, 2006 Amendment, just as they had done for themselves.

21. On May 19, 2016, CVR, through counsel, advised Nick that CVR no longer intended to honor its promise to continue to pay Nick "all salary, bonuses, distributions, and related benefit on the same basis as prior to [his] suspension," and specifically would no longer include him in the bonus payments that John and Tina were paying themselves. Nick never acquiesced to suspending his bonus payments, and to the contrary asserted that the suspension of those payments was a breach of CVR's promises and the agreement whereby he agreed not to actively work at the restaurant and shipping kitchen.

22. By taking this action, John and Tina refused to honor their agreement made on behalf of CVR that Nick would share in the customary year-end distribution of the profits of the business to its shareholders.

***

24. Following Nick's death. CVR began paying Jenny, as Nick's assignee, the monthly $16,666.67 payment for a surviving spouse as provided for in the December 2006 Amendment. . . .

25. CVR continued to make the payments to Jenny . . . through March, 2020, at which time it suspended payments due to the Covid-19 pandemic and the mandatory closure of restaurants, including the Rendezvous.

26. Since that time, CVR has repeatedly refused to reinstate those payments, even in part, and has expressed an intention not to reinstate those payments.

***

28. . . . CVR has been in a financial position whereby it could afford to pay Jenny under the December 2006 Amendment and to pay the Estate bonus payments owed to Nick up to the time of his death on September 5, 2019.

Based on the foregoing averments, Appellant asserted three claims against CVR. First, in Count 1, Appellant, in her capacity as Executrix of the Estate, alleged that CVR breached a contract with Nick by failing to pay him discretionary bonuses "equal" to those received by his siblings between 2016 and 2019. In Count 2, Appellant alleged that, based on the same factual allegations contained in Count 1, Nick was entitled to these bonuses under a theory of promissory estoppel. In Count 3, Appellant alleged an individual breach of contract claim, wherein she asserted that, under the 2006 amendment to the CVR Shareholders' Agreement, she was entitled to annual spousal benefits from CVR in her capacity as Nick's surviving spouse and assignee.

CVR moved to dismiss the breach of contract claims. On May 24, 2022, the Chancery Court entered an order denying CVR's motion for partial dismissal. In relevant part, the Chancellor held:

> The Court finds that the Complaint alleges an offer made to Nick Vergos to pay him all salary and bonuses if he took time away from work; that Nick Vergos dissented to his suspension but consented to the action by Defendant's Board of Directors making him that offer; that Nick Vergos accepted the offer thereby forming a binding contract, and that the Defendant then breached that contract. Assuming the allegations to be true, the Complaint states a claim for breach of contract. . . .
>
> With respect to Count 2 of the Complaint asserting a claim for promissory estoppel, the Court finds that the gravamen of that claim sounds in contract, not fraud, and that the six-year statute of limitations therefore applies. The Court further finds that the Complaint alleges a promise made by Defendant to Nick Vergos, his detrimental reliance on that promise, and then the failure of Defendant to honor the promise, and thereby states a claim for promissory estoppel.

Although the Chancery Court made initial rulings in the case, on March 9, 2023, it entered a "Sua Sponte Order Transferring the Case to Probate Court," which stated, in relevant part:

> It has come to the Chancery Court's attention that the Shelby County Probate Court has the Estate of Nick Charles Vergos under docket number PR-14989. Further, pursuant to Shelby County Tennessee Code of Ordinances Sec. 10-242 and 10-245, Shelby County Probate Court has subject matter jurisdiction to hear this case.

Following transfer to the Shelby County Probate Court ("trial court"), the parties

- 4 -

filed cross-motions for summary judgment, which the trial court heard on March 6, 2024. The trial court entered its initial order on April 8, 2024, and filed an amended order on February 10, 2025. The trial court granted CVR's motion for summary judgment on all counts. In relevant part, the trial court found that that CVR had no agreement (and made no promise) to Nick regarding its 2015 decision to suspend him from employment and, thus, had no legal obligation to pay him discretionary bonuses equal to those received by his siblings. As to Appellant's individual breach of contract claim, the trial court held *sua sponte* that Appellant lacked standing to assert a claim under CVR's Shareholders' Agreement and/or the 2006 amendment thereto. Appellant appeals.

## II. Issues

Appellant raises the following issues for review as stated in her brief

(1) Did the trial court err in ruling that shareholder agreements are not binding corporate governance documents so Jenny could not enforce the 2004 Agreement and its 2006 Amendments? Tenn. Code Ann. § 48-17-302(b) provides "no written agreement to which all or less than all the shareholders have actually assented which agreement relates to any phase of the affairs of the corporation, whether to the management of its business or to the division of its profits or otherwise, shall be invalid as between the parties thereto on the ground that it is an attempt by the parties thereto to restrict the discretion of the board of directors in its management of the business of the corporation." Both the 2004 Agreement and its 2006 Amendment relate to CVR's affairs and were executed by CVR and all its shareholders.

(2) Did the trial court err in ruling (A) the 2006 Amendment is unenforceable; (B) Jenny lacks standing to sue CVR for ceasing paying her the assigned Annual Payments; and (C) assignment of such payments to a non-shareholder spouse violates the 2004 Agreement? The 2006 Amendment provides (without violating the 2004 Agreement) for minimum annual payments by CVR to three specifically named, then-existing shareholders, upon their retirement, disability, or death, with the right to assign such payments to their spouses. Jenny is the surviving spouse of Nick, one of the specifically-named shareholders who assigned to her his rights to those payments.

(3) Did the trial court err in sua sponte ruling (A) it had jurisdiction over the subtrust and its trustee; (B) CVR shares could not be held in trust for Jenny's benefit; and (C) the trustee must distribute the CVR shares from the trust to secondary beneficiaries? The 2004 Agreement provides that upon a shareholder's death, CVR shares may be transferred to a Permitted Transferee. One such Permitted Transferee is a trust for the exclusive benefit of a shareholder's spouse or such shareholder's spouse and one or more of

such shareholder's children or other lineal descendants provided such trust would not cause the loss of CVR's S-corp. status and the trustee meets the stated requirements. Jenny meets the definition of Permitted Transferee in all respects.

(4) Did the trial court err in granting CVR Summary Judgment and denying Jenny Summary Judgment on her individual contract claim for the minimum "Annual Payments" promised in the 2006 Amendment (Complaint Count III)?

(5) Did the trial court err in granting CVR Summary Judgment and denying the Estate Summary Judgment on its claim for unpaid bonuses owed to Nick (Counts I and II)?

We do not reach these issues because the trial court lacked subject-matter jurisdiction over Appellant's breach of contract lawsuit. Although subject-matter jurisdiction was not raised as an issue, under Tennessee Rule of Appellate 13(b), "The appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review . . . ."[2]

## III. Discussion

A challenge to a court's subject-matter jurisdiction calls into question "the court's 'lawful authority to adjudicate a controversy brought before it' and, therefore, should be viewed as a threshold inquiry." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012) (internal citation omitted) (citing *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)). "Whenever subject matter jurisdiction is challenged, the burden is on the plaintiff to demonstrate that the court has jurisdiction to adjudicate the claim." *Id.* (citing *Staats v. McKinnon*, 206 S.W.3d 532, 543 (Tenn. Ct. App. 2006)). "The lack of subject matter jurisdiction is so fundamental that it requires dismissal whenever it is raised and demonstrated." *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999) (citing Tenn. R. Civ. P. 12.08). "Subject matter jurisdiction depends on the nature of the cause of action and the relief sought, and can only be conferred on a court by the constitution or a legislative act." *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712 (Tenn. 2012) (internal citation omitted) (citing *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994); *Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977)). The question of whether a court possesses subject-matter jurisdiction is an issue of law, which we review de novo. *Id.* at 712-13.

The only way for a court to obtain subject-matter jurisdiction is from either the state constitution or a statute. *Chapman*, 380 S.W.3d at 712; *see also In re Baby*, 447 S.W.3d

---

[2] The question of the probate court's jurisdiction arose during oral argument before this Court, and the parties were granted additional time to file supplemental briefs on that question. We have reviewed those supplemental filings.

807, 837 (Tenn. 2014); *In re Estate of Trigg*, 368 S.W.3d 483, 489 (Tenn. 2012); *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). "Parties cannot confer subject matter jurisdiction on a trial or appellate court by appearance, plea, consent, silence, or waiver." *In re Estate of Trigg*, 368 S.W.3d at 489 (citing *Caton v. Pic-Walsh Freight Co.,* 364 S.W.2d 931, 933 (Tenn.1963)); *In re Baby*, 447 S.W.3d at 837 ("Issues related to subject matter jurisdiction . . . are not subject to waiver."). In other words, the Chancery Court had no authority to confer subject-matter jurisdiction on the probate court by order. Rather, if the statutes outlining the Shelby County Probate Court's subject-matter jurisdiction do not confer that court with jurisdiction over Appellant's independent contract claims, then the probate court acted outside its jurisdiction, and its order is void ab initio. *Sheffy v. Mitchell*, 142 Tenn. 48, 215 S.W. 403, 404 (1919) (citations omitted) ("A court acting without jurisdiction is acting without authority of law, and its decrees are absolutely void."); *In re Estate of Trigg*, 368 S.W.3d at 489 ("[T]he orders and judgments entered by courts without jurisdiction over the subject matter of a dispute are void . . . .") (citing *Brown v. Brown*, 198 Tenn. 600, 281 S.W.2d 492, 497 (1955)). Thus, we begin our analysis with the statutes concerning the Shelby County Probate Court's jurisdiction. As this Court explained:

> Pursuant to statute, unless otherwise provided by statute, jurisdiction over estate issues lies in chancery court:
>
>> In all counties where not otherwise specifically provided by public, private, special or local acts, all jurisdiction relating to the probate of wills and the administration of estates of every nature, including the estates of decedents and of wards under guardianships or conservatorships and related matters previously vested in the county court [*i.e.*, probate court], the county judge or county chair, is vested in the chancery court of the respective counties. The chancery court in such counties shall have exclusive jurisdiction over the probate of wills and the administration of estates of every nature, including the estates of decedents and of wards under guardianships or conservatorships, and all matters relating thereto, previously vested in the county court.
>
> Tenn. Code Ann. § 16-16-201(a). **Shelby County is among the localities in which jurisdiction over these matters has been vested in a probate court**. *See In re Jones' Estate*, 44 Tenn. App. 323, 333-34, 314 S.W.2d 39, 43 (Tenn. Ct. App. 1957) ("The Probate Court of Shelby County was created by Chapter 86, Private Acts of the General Assembly of the State of Tennessee of 1870. By Sec. 2 thereof, it is given original jurisdiction of all probate matters. . . .").

*In re Estate of Ellis*, No. W2019-02121-COA-R3-CV, 2020 WL 7334392 (Tenn. Ct. App.

Dec. 14, 2020) (emphasis added).  As noted in ***Ellis***, The Probate Court of Shelby County was created by the Public Acts of 1870, Chapter 86 (the "1870 Act"), which provided in pertinent part:

> SECTION 1. Be it enacted by the General Assembly of the State of Tennessee. That there is hereby established in Shelby County, a Court of Record, to be called the Probate Court of Shelby County . . . .
>
> SECTION. 2. Be it further enacted, that the said Court shall have original jurisdiction of all matters of probate, the administration of estates and orphans' business, embracing all of the subjects and powers enumerated in and conferred by Sections 4,201, 4,203, 4,204, 4,205, and 4,208, of the Code of Tennessee, and concurrent jurisdiction with the Chancery Courts of Shelby County over the persons and estates of idiots, lunatics, and other persons of unsound mind; and of proceedings for the partition or sale of estates by personal representatives, guardians, heirs, tenants in common, joint owners or coparceners, for the sale of lands at the instance of the creditors of the descendants, if the personal property is insufficient to satisfy the debts of the estate, and for the allotment of dower . . . .

1870 Public Acts, Ch. 86, §§ 1-2.  The 1870 Act provides that the probate court's jurisdiction embraces "all of the subjects and powers enumerated in and conferred by Sections 4,201, 4,203, 4,204, 4,205, and 4,208 of the Code of Tennessee."  These code sections refer to sections 4,201 through 4,217 of the 1858 Tennessee Code, which sections originally outlined the jurisdiction, powers, and duties of the "County Court," *i.e.,* probate court. Pertinent here are the provisions of Sections 4,201, 4,203, and 4,204 of the 1858 Tennessee Code.  Section 4,201 of the 1858 Tennessee Code is now codified at Tennessee Code Annotated section 16-16-107, which provides, in relevant part:

> (a)(1) The county court has original jurisdiction in the following cases:
>
> (A) The probate of wills;
> (B) The granting of letters testamentary and of administration, and the repeal and revocation of letters testamentary and of administration;
> (C) All controversies in relation to the right of executorship or of administration;
> (D) The settlement of accounts of executors and administrators;
> (E) The partition and distribution of the estates of decedents; and for these purposes, the power to sell the real and personal property belonging to the estates, if necessary to make the partition and distribution, or if manifestly for the interest of the parties;
> (F) To sell real estate for the payment of debts of a decedent as provided in former §§ 30-602 and 30-603;
> (G) The appointment and removal of guardians for minors and conservators for persons adjudicated incompetent, and all controversies as to the right of

guardianship and conservatorship, and the settlement of guardian and conservator accounts;

(H) The partition, sale or division of land;

(I) The changing of names and the legitimation of children;

(J) The issuance of inquisitions of unsoundness of mind; and

(K) The binding out of apprentices, and all controversies between master and apprentice.

Tenn. Code Ann. § 16-16-107(a).  Former section 4,203 of the 1858 Tennessee Code is now codified at Tennessee Code Annotated section 16-16-109, which states that the probate court is vested with jurisdiction as set out in section 16-16-107 (previously quoted) and section 16-16-108 (vesting the probate court and the chancery and circuit courts with "concurrent jurisdiction . . . to sell real estate of decedents and for distribution or partition").  Former section 4,204 of the 1858 Tennessee Code is currently codified at section 16-16-115, which vests the probate court with "all the incidental powers belonging to or conferred by law upon the court with which its jurisdiction is concurrent, for the purpose of exercising and effectuating such jurisdiction."

The General Assembly has amended the 1870 Act several times.  In 1923, the General Assembly extended the probate court's jurisdiction to encompass the authority "to remove the disabilities of minority." 1923 Public Acts, Ch. 163, § 1. In 1935, the General Assembly: (1) added language to section 1 of the 1870 Act relating to the appointment or election to fill any vacancy in the office of Shelby County Probate Judge; and (2) added language to section 2 of the 1870 Act relating to the settlement of guardians' accounts. 1935 Private Acts, Chs. 178-179. In 1941, the General Assembly added language to section 2 of the 1870 Act that, concerning the removal of disabilities of minority, the Shelby County Probate Court and Shelby County Chancery Court have concurrent jurisdiction. 1941 Private Acts, Ch. 241.  More relevant to the instant case, in 1985, the General Assembly added the following language to the end of section 2 of the 1870 Act:

The probate court shall have and is hereby granted concurrent jurisdiction with the chancery courts to construe and interpret wills; to entertain proceedings to reopen records made by guardians and conservators and determine upon proof any balance due by them; to determine controverted and disputed issues in cases involving executors, guardians and conservators, and to determine all matters related thereto; and to determine title to real property involved in estates.

1985 Private Acts, Ch. 28.

The Chancery Court's March 9, 2023 order transferring this action to the trial court does not cite the 1870 Act (as amended), nor does it cite any of the Title 16, Chapter 16 statutes, *supra*, addressing the probate court's jurisdiction.  Rather, the Chancery Court cites Shelby County Code of Ordinances sections 10-242 and 10-245 as a basis for the

probate court's jurisdiction. Shelby County Ordinance section 10-242 is ostensibly a restatement of section 2 of the 1870 Act.  The Ordinance provides:

> The probate court shall have original jurisdiction of all matters of probate, the administration of estates and orphans' business, embracing all of the subjects and powers enumerated in and conferred by T.C.A. §§ 16-16-107, 16-16-109, 16-16-110, 16-16-114 and 16-16-115, and concurrent jurisdiction with the chancery courts of the county over the persons and estates of idiots, lunatics, and other persons of unsound mind; and of proceedings for the partition or sale of estates by personal representatives, guardians, heirs, or tenants in common, and for the sale of land at the instance of creditors of the decedent, if the personal property is insufficient to satisfy the debts of the estate; to remove the disabilities of minors; and it is hereby vested with all the powers of a chancery court touching these matters. The judge of the probate court is also hereby vested with all the powers conferred by law.

Shelby County Ordinance Sec. 10-245 contains two sections. Section (a) vests the probate court with jurisdiction to correct errors in the county court clerk's records, particularly as to marriage licenses. Section (b) is a verbatim recital of Chapter 28 of the 1985 Private Acts, quoted above.

"Article VI, section 1 of the Tennessee Constitution gives the Legislature the power to create courts of general, special, or limited jurisdiction." *In re D.Y.H.*, 226 S.W.3d 327, at 330 & n. 2 (Tenn. 2007) (citing *State ex rel. Ward v. Murrell*, 90 S.W.2d 945, 946 (Tenn. 1936)).  From the foregoing, the General Assembly has specifically enumerated those matters over which the probate court has jurisdiction.  As such, it is a court of limited jurisdiction and may only act on matters specifically outlined in the foregoing statutes.  *See, e.g., Wiley v. Williams*, No. E2005-02518-COA-R3-CV, 2006 WL 929264 (Tenn. Ct. App. Apr. 10, 2006) (noting that the probate court is a court of limited jurisdiction and has no subject-matter jurisdiction over tort claims); *Cannon v. Collier*, No. 88-76, 1988 WL 85356, at *1 (Tenn. Ct. App. Aug. 17, 1988) (same).  Conversely, the Shelby County Chancery Court is a court of general jurisdiction.  Tenn. Code Ann. § 16-11-101 ("The chancery court has all the powers, privileges and jurisdiction properly and rightfully incident to a court of equity"). Furthermore, the chancery court is granted concurrent jurisdiction with the circuit court over most civil actions:

> The chancery court has concurrent jurisdiction, with the circuit court, of all civil causes of action, triable in the circuit court, except for unliquidated damages for injuries to person or character, and except for unliquidated damages for injuries to property not resulting from a breach of oral or written contract; and no demurrer for want of jurisdiction of the cause of action shall be sustained in the chancery court, except in the cases excepted.

Tenn. Code Ann. § 16-11-102(a).  Moreover, circuit and chancery courts are vested with jurisdiction over contract matters:

Notwithstanding any law to the contrary, **contracts** for goods or services between individuals, partnerships, associations, **corporations**, governmental entities or limited liability companies **are enforceable in either chancery or circuit court** in the county where:

(1) The defendant may be found;
(2) The contract was executed;
(3) The goods were provided or were to be provided; or
(4) Services were rendered or were to be rendered.

Tenn. Code Ann. § 16-11-115 (emphases added). Whereas section 16-11-115 specifically grants subject-matter jurisdiction over contract disputes between individuals and corporations to the chancery court, no such jurisdiction is contemplated in the probate court jurisdiction statutes, *supra*. Again, a court's subject-matter jurisdiction depends on the nature of the cause of action and the relief sought, *Chapman*, 380 S.W.3d at 712. Here, there is no question that Appellant's lawsuit asserts two independent causes of action for breach of contract against CVS, a corporation. Specifically, Appellant's lawsuit was filed against "Charles Vergos Rendezvous, Inc." by "Jenny Mallery Vergos, Individually, and as Executrix of the Estate of Nick Charles Vergos, Deceased." Under section 16-11-115, the probate court clearly had no subject-matter jurisdiction over Appellant's individual claim for breach of contract. As to Appellant's claim against CVS in her capacity as Executrix, the mere fact that Appellant designates herself as "Executrix" of the Estate does not, *ipso facto*, mean that the causes of action stated in her complaint fall under the purview of the administration of decedent's Estate. As Executrix of Nick's Estate, Appellant had an "affirmative fiduciary duty to marshal and collect the assets of the [E]state." *In re Estate of Hendrickson*, No. M2008-01332-COA-R9-CV, 2009 WL 499495, at *5 (Tenn. Ct. App. Feb. 25, 2009) (citations omitted). As contemplated under the 1985 amendment to the 1870 Act, *see supra*, the probate court's jurisdiction "to determine controverted and disputed issues in cases involving [an] executor" might be triggered in actions involving an executor's fiduciary duties but is not triggered in cases such as this where the executor initiates a breach of contract claim on behalf of the estate in his or her official capacity. Although the probate court may have jurisdiction over the settlement or distribution of any proceeds awarded in Appellant's breach of contract case filed on behalf of the Estate, it does not have jurisdiction to try the breach of contract claim itself. This action sounds only in contract and is within the jurisdiction of the chancery (or circuit) court pursuant to Tennessee Code Annotated section 16-11-115. Here, Appellant chose to bring her breach of contract lawsuit in the Chancery Court, and subject-matter jurisdiction properly attached there. Tenn. Code Ann. § 16-11-115. In its order transferring the case, the Chancery Court cited sections 10-242 and 10-245 of the Shelby County Code of Ordinances as grounds for the probate court's jurisdiction. To be clear, the subject-matter jurisdiction of a trial court in Tennessee is established by constitution or statute and not by enactments of a county legislative body. *Chapman*, 380 S.W.3d at 712. Therefore, the Chancery Court's reliance on the ordinances to establish the probate court's jurisdiction was error, and the transfer

- 11 -

order was ineffective to confer jurisdiction on the probate court.

## IV. Conclusion

Because the trial court's order granting summary judgment to CVR was entered without subject-matter jurisdiction, it is void ab initio. We vacate that order and remand the matter to the trial court for the sole purpose of transferring Appellant's breach of contract lawsuit back to the Shelby County Chancery Court. Costs of the appeal are assessed one-half to the Appellant, Jenny Mallery Vergos, and one-half to the Appellee, Charles Vergos Rendezvous, Inc. Execution for costs may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE